Robert J. ARCHULETA; Lillie N. Archuleta; and Robert Joshua Archuleta, a minor, by next friends, Robert J. Archuleta and Lillie N. Archuleta, Plaintiffs–Appellants,

v.

Quinton McSHAN, in his individual capacity only; Joe Tarazon, in his individual capacity only; New Mexico State Police; and Morris L. Cordova, Defendants–Appellees.

No. 87–1461.

United States Court of Appeals,
Tenth Circuit.

March 1, 1990.

John B. Roesler of Wolfe, Roesler, Romero & LaMar, Santa Fe, N.M., for plaintiffs-appellants.

Janet Clow of White, Koch, Kelly & McCarthy, P.A., Santa Fe, N.M., for defendants-appellees.

Before MOORE, ANDERSON and EBEL, Circuit Judges.

EBEL, Circuit Judge.

This appeal concerns the asserted constitutional rights of a three-year-old child who witnessed a police officer's violent arrest of the child's father. The child brought suit under 42 U.S.C. § 1983, alleging that his liberty interest under the Fourteenth Amendment was violated as a result of his witnessing the arrest.[1] The district court entered summary judgment in favor of the police officer and his superiors, holding that the officer's conduct was not directed toward the child and that the child therefore did not have his constitutional rights violated. We affirm.

### Facts

In the early morning of July 7, 1985, plaintiff was a passenger in a truck driven by his father. Plaintiff's mother and an adult family friend also were passengers. As the father was pulling into his driveway, a police officer stopped him. The officer told the father that one of his headlights was out and that he did not have his young child, the plaintiff, in a child restraint. The officer asked the father for his driver's license, which the father refused to give. After smelling alcohol on the father's breath, the officer asked the father to exit the car. The father refused.

After radioing for a police backup unit, the officer again requested the father to exit the car. After the father again refused, the officer grabbed him in order to pull him from the car and arrest him. The father clung to the steering wheel so that he could not be pulled from the car. A struggle ensued. The officer hit the father's leg with his flashlight and kicked him multiple times in the process of getting the father out of the truck and into the police unit.

As the altercation began, plaintiff's mother took plaintiff from the truck and gave him to the adult friend to hold. The friend kept plaintiff at least 20 feet away from the fray. The friend was free to remove plaintiff totally from the scene of the altercation, but she apparently chose to stay in the immediate vicinity to observe the event herself. Plaintiff was crying. At some point during the struggle, plaintiff's mother tried to get the house keys out of the father's pocket, purportedly to be able to take the child into the house. The officer pushed her away and purportedly said: "I have no sympathy for the child or anyone here." The father eventually was taken to the police station.[2] At no time did the officer physically touch or threaten the plaintiff.

Plaintiff sued the officer and his superiors under 42 U.S.C. § 1983, alleging that the officer acted with intentional or reckless disregard and indifference to his emotional well-being during the arrest.[3] The district court awarded summary judgment in favor of the defendants, holding that plaintiff was not deprived of any right secured by the Constitution or laws of the United States.

### Discussion

On appeal, plaintiff asserts that his "Fourteenth Amendment substantive due process liberty interest" was violated by defendants' conduct. Appellant's Br. at 2. We disagree.

We begin by noting that "section 1983 imposes liability for violations of rights protected by the constitution or laws of the United States, not for violations of duties of care arising out of tort law. Remedies for the latter type of injury must be sought in the state court under the traditional tort-law principles." *Wise v. Bravo*, 666 F.2d

---

**1.** 42 U.S.C. § 1983 provides, in pertinent part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an ac-

tion at law, suit in equity, or other proper proceeding for redress.

**2.** The father failed a field sobriety test and, at the police station, refused to submit to a breath alcohol test.

**3.** Plaintiff's father and mother also filed section 1983 claims but subsequently dismissed them voluntarily.

1328, 1333 (10th Cir.1981). Thus, we review this case not to determine whether the police officer may have committed an actionable tort against plaintiff, but rather to determine whether that conduct violated any of plaintiff's constitutional rights. "In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor,* —— U.S. ——, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989).

■ We must also keep firmly in mind the well-settled principle that a section 1983 claim must be based upon the violation of plaintiff's personal rights, and not the rights of someone else. *Dohaish v. Tooley,* 670 F.2d 934, 936 (10th Cir.) ("[T]he § 1983 civil rights action is a personal suit. It does not accrue to a relative, even the father of the deceased."), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982); *see also Coon v. Ledbetter,* 780 F.2d 1158, 1160–61 (5th Cir.1986); *Trujillo v. Board of County Commissioners,* 768 F.2d 1186, 1187 (10th Cir.1985). Thus, regardless of what happened to plaintiff's father, this case turns upon whether plaintiff personally suffered any deprivation of a constitutional right possessed by him individually.

■ The precise interest that plaintiff is asserting here is a liberty interest, under the Due Process Clause of the Fourteenth Amendment, to be free of emotional trauma suffered as a result of observing allegedly excessive police force which was directed entirely at his father.[4] We hold that plaintiff has no such liberty interest, and that the district court was therefore correct in granting summary judgment on this ground.

The Supreme Court has stressed that "[h]istorically, th[e] guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property." *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986) (emphasis in original). The Court in *Daniels* concluded that the word "deprive" in the Due Process Clause indicates that something more than a mere negligent act is required to trigger the protections of that provision. *Id.* at 330, 106 S.Ct. at 664. The Court cautioned that if injuries caused by mere negligent acts could violate the Due Process Clause, that provision, which is designed to protect the individual from arbitrary acts of the state, would be "trivialize[d]." *Id.* at 331–32, 106 S.Ct. at 664–65.[5] In a companion case, *Davidson v. Cannon,* 474 U.S. 344, 348, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986), the Court underscored its holding in *Daniels* and concluded that "the protections of the Due Process Clause, whether procedural or substantive, are ... not triggered by lack of due care."

The Supreme Court has recently confronted the issue of whether a municipality can be held liable for a violation of due process in the absence of deliberate action in *City of Canton v. Harris,* —— U.S. ——, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). *City of Canton* involved allegations that a municipality had violated the Due Process Clause when it improperly trained its police officers. The Court held that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to *deliberate indifference to the rights of persons* with whom the police come into contact." *Id.* 109 S.Ct. at 1204 (emphasis added).

---

**4.** It is far from clear that the officer's force here was excessive. In his deposition, the father admitted that he refused to give the officer his driver's license; that he refused to exit his truck when the officer notified him that he was under arrest and requested that he get out of his truck; that he clung to the steering wheel when the officer tried to remove him; that he grabbed a fence when the officer tried to handcuff him; and that he otherwise forcibly resisted arrest. Doc. 109, Exh. 1 at 37–38, 48–50, 69. However, the district court found it unnecessary to deter-

mine whether the officer used excessive force in effecting the arrest, and, similarly, we need not decide that issue either.

**5.** The Court in *Daniels* did not decide "whether something less than intentional conduct, such as recklessness or 'gross negligence,' is enough to trigger the protections of the Due Process Clause." *Id.* 474 U.S. at 334 n. 3, 106 S.Ct. at 666 n. 3; *see also* footnote 8, *infra.*

The requirement of *Daniels, Davidson,* and *City of Canton* that there be an element of deliberateness in directing the misconduct toward the plaintiff before the Due Process Clause is implicated comports with prior precedent of this circuit. In *Wise v. Bravo,* 666 F.2d 1328 (10th Cir.1981), we established that something beyond carelessness is required before police misconduct can be remedied under section 1983. The court held that mere carelessness or unwise excessive zeal, even amounting to an abuse of official power, may not be enough to establish liability for a due process claim under section 1983 in the absence of requisite scienter. *Id.* at 1333–34.

The problem with plaintiff's claim is that no state conduct was directed at him, and he cannot establish that defendants had the requisite intent to violate *his* rights. He was merely a bystander who was asserting indirect and unintended injury as a result of police conduct directed toward another.

We use the term bystander to mean someone who witnesses police action but who is not himself or herself an object of that action.[6] As such, a bystander is unable to assert the kind of deliberate deprivation of his or her rights necessary to state a due process claim under section 1983.

The case law supports our conclusion. For example, in *Grandstaff v. City of Borger,* 767 F.2d 161, 172 (5th Cir.1985), *cert. denied,* 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987), the court held that a rancher's wife and stepsons who witnessed a mistaken shooting of the rancher by police had no constitutional claim for their own emotional injuries under section 1983, although they did have a claim under state tort law. The court stated, "[w]e fail to see, however, that these bystanders have proved an independent cause of action under § 1983.... [T]here is no constitutional right to be free from witnessing this police action." *Id.*

Likewise, in *Coon v. Ledbetter,* 780 F.2d 1158 (5th Cir.1986), the court held that a wife who witnessed sheriff's deputies shooting into her mobile home and wounding her husband had no constitutional claim for emotional injuries. The court ruled that whatever her right to recover as a bystander under state law, she could not state a constitutional claim because "[t]here was no evidence that any act of the deputies was *directed* toward [her]." *Id.* at 1161 (emphasis added). In contrast, the court held that the couple's minor daughter, who was in the trailer at the time that the sheriff's deputies fired into it with knowledge of her presence in the trailer, did have a constitutional claim because of the officers' conduct which deliberately placed her in jeopardy. *Id.*

Finally, in *Trujillo v. Board of County Commissioners,* 768 F.2d 1186 (10th Cir. 1985), a case that is somewhat related to the issue we consider here, a mother and daughter brought actions against various public officials, alleging that the wrongful death of their son and brother, respectively, while incarcerated in a county jail, deprived them of their constitutional right of familial association. The court rejected that claim because there was no showing that the jailers directed any activity toward the familial relationship with an intent to interfere with that relationship. The court stated:

> For these reasons, we conclude that an allegation of *intent to interfere with a particular relationship* protected by the freedom of intimate association is required to state a claim under section 1983....
>
> Although the complaint alleges intent with respect to [the inmate's] rights, this intent may not be transferred to establish intent to deprive his mother and sister of their constitutionally protected rights. The alleged conduct by the State, however improper or unconstitutional with respect to the [inmate], will

---

6. If, during the course of an arrest or other police action, the police direct action against a person who previously had bystander status with the requisite deliberateness to do injury to that person, his status would at that point

change from one of a bystander to a direct object of state action. At that point, a due process claim could arise on behalf of such a person.

work an unconstitutional deprivation of the freedom of intimate association only if the conduct was *directed at that right.*

*Id.* at 1190 (emphasis added).[7]

The principal case on which plaintiff relies, *White v. Rochford,* 592 F.2d 381 (7th Cir.1979), is distinguishable. In *White,* police officers stopped a car and arrested the driver for drag racing. The police then deliberately abandoned the three minor children who were passengers in the car in cold temperatures on the Chicago Skyway. The children eventually made their way across eight lanes of heavy traffic and telephoned their mother. One of the children, a five-year-old, had to be hospitalized for a week after the ordeal. After the officers had completed the arrest of the driver, he pleaded with them to provide for the safety of the three minor children in his custody. The officers rejected those pleas, and intentionally abandoned the children in the automobile on the side of the busy freeway in the middle of the night. The Seventh Circuit held that the children had a section 1983 action against the police officers for physical and emotional harm. That case is distinguishable because the officers' conduct in abandoning the children on the freeway after the arrest was completed was clearly directed toward the children themselves.

We have previously recognized that "we must provide a logical stopping place for [section 1983] claims." *Trujillo v. Board of County Commissioners,* 768 F.2d at 1190. The Supreme Court, in *Daniels, Davidson,* and *City of Canton,* has instructed us that the line is to be drawn by requiring that a plaintiff who asserts a due process claim under section 1983 prove that he or she is the deliberate object of the state action which caused injury.

Here, because the evidence shows that the police officer did not direct any of his actions toward plaintiff with the requisite intent to cause him any physical or emotional damage, plaintiff has failed to show a violation of his due process rights.

Although the Court in *Daniels* and *City of Canton* did not define the outer limits of the "intentional" or "deliberate indifference" standard, we assume for purposes of this analysis that reckless conduct could also form the basis for a due process violation. Our assumption is supported by the fact that recklessness "is a proxy for intent," *Archie v. City of Racine,* 847 F.2d 1211, 1220 (7th Cir.1988) (en banc), *cert. denied,* —— U.S. ——, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989) (concluding that reckless conduct can trigger the protections of the Due Process Clause, but that gross negligence cannot), and recklessness includes an element of deliberateness—a *conscious* acceptance of a known, serious risk. *See* Model Penal Code § 2.02(2)(c) (1985) (defining recklessness as the *conscious* disregard of "a substantial and unjustifiable risk.... involv[ing] a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation"); W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser & Keeton on the Law of Torts* § 34, at 213 (5th ed. 1984) (describing reckless conduct as conduct "in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and which thus is usually accompanied by a *conscious* indifference to the consequences" (footnotes omitted) (emphasis added)).[8]

---

**7.** Unlike the pure due process right asserted here, *Trujillo* involved the freedom of intimate association, which the court identified as "'an intrinsic element of personal liberty.'" *Trujillo v. Board of County Commissioners,* 768 F.2d at 1188 (quoting *Roberts v. United States Jaycees,* 468 U.S. 609, 620, 104 S.Ct. 3244, 3250, 82 L.Ed.2d 462 (1984)). The court in *Trujillo,* in concluding that the state must intend to interfere with a relationship protected by the freedom of intimate association in order for section 1983 liability to arise, relied on cases involving the First Amendment right of expressive association. *Id.* at 1189–90.

**8.** In contrast, gross negligence may not be sufficient to satisfy the deliberateness requirement because conduct can be grossly negligent even though it is not intentional or willful. It is merely an extreme variant of negligence or carelessness, and the Supreme Court has held that negligent conduct does not trigger the protections of the Due Process Clause. However, we do not need to decide whether grossly negligent conduct could trigger the protections of the

■ Here, there has been no showing of recklessness. Notwithstanding the officer's statement that he had "no sympathy" for the child, there has been no showing that the officer acted in conscious disregard of a substantial risk to plaintiff during the time that he was arresting plaintiff's father. The officer's actions were directed solely toward plaintiff's father, not plaintiff. Further, there was no obvious and severe risk to the plaintiff during the course of the arrest. Plaintiff was approximately 20 feet removed from the accident and under the safe custody of a neighbor. The neighbor was perfectly free to remove plaintiff entirely from the vicinity. At no time was plaintiff in any physical danger from the skirmish between plaintiff's father and the officer. Under these facts, it is apparent beyond doubt that there was not the required conduct directed toward plaintiff nor the requisite intent to injure plaintiff that would give rise to a due process claim under section 1983. Our conclusion that the officer did not act recklessly is particularly appropriate in light of the need to make "allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Graham v. Connor*, 109 S.Ct. at 1872.

We hold that the district court correctly entered summary judgment in favor of the defendants in this case and, accordingly, we AFFIRM.

---

Due Process Clause because plaintiff has alleged only an intentional or reckless disregard of his rights. Plaintiff did not attempt to premise his claim on gross negligence.