930 F.2d 33
 Unpublished Disposition
NOTICE: Tenth Circuit Rule 36.3 states that unpublished opinions and orders and judgments have no precedential value and shall not be cited except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel.
Robert HARDEN, Plaintiff-Appellant,
v.
Larry PRINCE, individually and in his official capacity as a
Riverton City Police Officer, James Waters, individually and
in his official capacity as a Riverton City Police Officer,
Michael Hays, in his official capacity as Chief of Police of
the Police Department of the City of Riverton, Wyoming, the
City of Riverton, Wyoming, a Wyoming municipal corporation,
Defendants-Appellees.
 No. 89-8035.
 United States Court of Appeals, Tenth Circuit.
 Feb. 28, 1991.
 
 Before STEPHEN H. ANDERSON and EBEL, Circuit Judges, and CHRISTENSEN, Senior District Judge.*
 ORDER AND JUDGMENT**
 EBEL, Circuit Judge.
 
 
 1
 This is an appeal from a decision of the United States District Court for the District of Wyoming holding that the due process rights of plaintiff-appellant Robert Harden were not violated when a Riverton, Wyoming police officer transported him from Riverton to Kinnear, Wyoming, and left him there at approximately 1:30 in the morning. Although the facts in this case support a finding of negligence if not gross negligence on the part of the police officers, we cannot conclude on the record before us that defendants-appellees Larry Prince and James Waters behaved in a reckless manner with deliberate indifference to appellant's due process rights. We, therefore, affirm the judgment of the district court as to defendants Larry Prince and James Waters.[1]
 
 Facts
 
 2
 On May 29, 1988, plaintiff stopped in Riverton to visit his half-sister, April Way, while on his way to Seattle, Washington. Plaintiff and Ms. Way went to the Cedar Bar in Riverton, and during the one to two hours that he spent at the bar, plaintiff consumed a considerable amount of alcohol. While at the bar, an altercation began between plaintiff and one or more other patrons. Apparently, the altercation continued outside the bar, at which time one of plaintiff's feet was broken in two places.
 
 
 3
 Plaintiff made his way to the police station a few blocks away to complain of the incident. Both the police dispatcher and Riverton Police Sgt. Larry L. David recognized that plaintiff was in need of medical attention, and an ambulance was called to transport plaintiff to Riverton Memorial Hospital. Dr. Thomas H. Neithammer, an internal medicine specialist on call in the emergency room, treated plaintiff's injuries. Dr. Neithammer telephoned Dr. Charles Allen, an orthopedic surgeon, who recommended that Neithammer place a "sugartong splint"[2] on plaintiff's injured foot. Neithammer placed the splint on plaintiff's foot and scheduled surgery (to be performed by Dr. Allen) for the following morning. Plaintiff was then taken to Room 109 of the hospital to spend the night.
 
 
 4
 Plaintiff was extremely uncooperative from the time he entered the hospital, and he repeatedly demanded to be released. Defendants Larry Prince and James Waters, police officers with the Riverton Police Department, were called to the hospital on two separate occasions to quell the disturbances that plaintiff had caused. On the second occasion that Prince and Waters were called to the hospital, they found plaintiff sitting at the edge of his bed complaining that he wanted to leave Wyoming.
 
 
 5
 In response to that request, the necessary paperwork for leaving the hospital against medical advice was prepared for plaintiff's signature. Dr. Allen was called at his home to inform him of plaintiff's desire to leave the hospital. Prince spoke with Dr. Allen, who told Prince that plaintiff should be permitted to leave as long as he signed the proper release forms. Prince did not ask Dr. Allen or anyone at the hospital about plaintiff's medical condition. The officers were not informed as to the condition of plaintiff's ankle and they assumed that he had suffered an injury to his ankle, which had been treated.
 
 
 6
 Plaintiff signed the release form, and he asked Prince to promise to give him a ride. Plaintiff told Prince that he wanted transportation to California or to Jackson, Wyoming, which is a few hundred miles from Riverton. Those requests were refused.
 
 
 7
 Prince asked plaintiff if he had any relatives in Riverton, and plaintiff erroneously answered "No." Neither Prince nor Waters knew that plaintiff had relatives in the area. Prince also asked plaintiff if he was staying with someone in the Riverton area; if he wanted to be taken to a motel; and if he wanted to go to the city jail to spend the night. Plaintiff answered "No" to each of those questions. Plaintiff also was not responsive to questions concerning the whereabouts of his truck.
 
 
 8
 Prince then directed Waters to transport plaintiff to the nearest location west of Riverton where telephone services were available. Plaintiff requested that Officer Waters transport him to Kinnear, Wyoming, a small town approximately 15 miles west of Riverton. Kinnear has an ambulance service, a convenience store, and a volunteer fire department. However, none of those facilities was open at the time plaintiff was taken there. There were public pay telephones in Kinnear, and the city was a stopping place for bus service.
 
 
 9
 An expert called by plaintiff testified as to the weather conditions at the nearest weather station in Lander, Wyoming. He testified that between 2:00 A.M. and 5:00 A.M. on the morning of May 30, the temperature was between 58? and 59? Fahrenheit and that the wind was blowing at approximately 9.2 miles per hour. The expert testified that the wind could have created wind chill conditions of approximately 10? Fahrenheit. The district court found that the plaintiff was inadequately dressed for the weather conditions at Kinnear. However, the district court found that Officer Waters did not notice the wind conditions at Kinnear. Further, there is no factual finding that the wind was actually blowing at Kinnear at the time Officer Waters dropped plaintiff off. Plaintiff's uncle testified that when he picked up Plaintiff in Kinnear, the temperature was 39? Fahrenheit and it was breezy. The district court made no explicit findings as to the actual weather conditions in Kinnear when plaintiff was dropped off.
 
 
 10
 Plaintiff spent about 2-2 1/2 hours in Kinnear. During that time, he made three telephone calls to the 911 dispatcher, who was stationed at the Riverton Police Department. Plaintiff did not speak during either of the first two calls. During the third call, plaintiff told the dispatcher that he wanted the police officer who had transported him to Kinnear to pick him up. Plaintiff also stated, however, that there was no emergency and that he did not need an ambulance. The dispatcher then suggested that plaintiff could obtain a cab, using money ($90.00) that he had in his sock, and the dispatcher gave him the telephone number of the cab company. Plaintiff ignored that advice, but did call his uncle, who picked him up and found him to be "drunker than a 'skunk,' 'paranoid,' 'scared,' and 'cold.' " Dist.Ct.Op. at 8. Plaintiff's uncle then transported him to the hospital in Lander for treatment of his foot. When he arrived at the hospital, plaintiff had no splint on his ankle, which was "black, blue, and distorted." Dist.Ct.Op. at 8. Plaintiff maintains that he has suffered various emotional injuries as a result of this incident, including "sleep disturbances and night sweats." Dist.Ct.Op. at 23.
 
 
 11
 On July 19, 1988, plaintiff filed this action in the United States District Court for the District of Wyoming, alleging under 42 U.S.C. Sec. 1983 that Prince and Waters violated his substantive due process rights and that Prince and Waters violated Restatement (Second) of Torts Sec. 324 (1965), as incorporated by Wyoming tort law.[3] Plaintiff filed an amended complaint on October 7, 1988, adding the City of Riverton and Michael Hays, Riverton's Chief of Police, as defendants. The Amended Complaint included additional allegations that Waters had been inadequately trained and supervised in violation of the Due Process Clause. The Amended Complaint also alleged that Prince's and Waters' superiors violated the Due Process Clause by "provid[ing] implicit authorization, approval or knowing acquiescence to the transportation of intoxicated persons to rural settings where those persons were abandoned" and by following "a custom by which intoxicated persons were transported to rural settings and abandoned...." Appellant's Br. at 6. Finally, the Amended Complaint added a second pendent claim under Wyoming tort law, based on Restatement (Second) of Torts Sec. 323 (1965).[4] Plaintiff sought compensatory and punitive damages, and the recovery of costs and attorney's fees.
 
 
 12
 On agreement of the parties, the case was tried without a jury. After a four-day trial, the district court rejected all of plaintiff's Sec. 1983 claims. However, the district court ruled in favor of plaintiff on his pendent claim against Prince and Waters for negligence under Restatement (Second) of Torts Sec. 324. The court awarded $1,750 in damages for the exposure to the elements and for the pain and suffering endured by plaintiff as a result of the negligent conduct of Prince and Waters.[5] The district court rejected plaintiff's claim for punitive damages under Wyoming law, finding that Prince and Waters did not act "willfully, wantonly, or maliciously, or in conscious disregard of the plaintiff's rights." Dist.Ct.Op. at 43.
 
 
 13
 On appeal, plaintiff raises the following issues: (1) whether defendants violated plaintiff's substantive due process rights and are liable under 42 U.S.C. Sec. 1983, and (2) whether the district court erred in denying plaintiff's request for attorney's fees under 42 U.S.C. Sec. 1988. Plaintiff has accepted the district court's findings of fact and has chosen not to submit the transcript of the hearing on appeal.
 
 Discussion
 
 14
 In order to recover under 42 U.S.C. Sec. 1983, plaintiff must show that the defendants' conduct constituted more than negligence or even gross negligence, but that at a minimum it rose to an actual conscious awareness of a known serious risk to plaintiff's well being coupled with a conscious disregard of that risk. See Berry v. City of Muskogee, 900 F.2d 1489, 1496 (10th Cir.1990); Archuleta v. McShan, 897 F.2d 495, 499 (10th Cir.1990). See also Wood v. Ostrander, 879 F.2d 583, 588 (9th Cir.1989), cert. denied, 111 S.Ct. 341 (1990) (suggesting that the deliberate indifference standard requires more than a showing of gross negligence).
 
 
 15
 The district court found that "plaintiff ... failed to prove that the defendants ... acted willfully, wantonly, or maliciously, or in conscious disregard of the plaintiff's rights." Dist.Ct.Op. at 43. Although this statement was contained in the "Conclusions of Law" section as opposed to the "Findings of Fact" section, we view this as a factual finding. See Ostrander, 879 F.2d at 588 & n. 4. Thus, the best plaintiff can do is to argue that this statement conflicts with the recited facts, supra. While the facts suggest that the officers may have been negligent, or even grossly negligent, they do not mandate a finding that Officer Waters consciously disregarded a known risk of substantial harm to plaintiff's security when he dropped plaintiff off in Kinnear. Specifically, we note: (1) there is no finding as to the temperature in Kinnear when Officer Waters dropped plaintiff off that morning of May 30, but at the nearest weather station in Lander, it was approximately 59? Fahrenheit; (2) the district court found that at the time Officer Waters dropped plaintiff off, he was not aware of any wind so there is nothing in the record to support the application of a wind-chill factor to the temperature when plaintiff was dropped off; (3) there is no finding that the officers believed that plaintiff was without money when they decided to transport him to Kinnear, and in fact he had $90; (4) the district court found that plaintiff was transported to Kinnear at his own request; (5) the district court found that the officers assumed that plaintiff's ankle had been treated and found that there was no evidence that the officers were aware that plaintiff had suffered a fractured ankle; (6) there were telephone and other emergency services in Kinnear; (7) the district court found that the attending physician believed that plaintiff could make a competent decision concerning his release; (8) there was no finding that the officers knew plaintiff was intoxicated at the time Waters left him in Kinnear, or that he was otherwise incapable of taking care of himself. The record does reflect that a number of hours had elapsed since plaintiff had been drinking in the bar; and (9) the district court found that, under the circumstances, plaintiff was not placed in a life threatening situation.
 
 
 16
 The district court was in a far better position than we are to judge the credibility of the plaintiff and the defendants. We do note that at various times the court concluded that the plaintiff's version of the events was not credible. It was the duty of the district court to probe the defendants' state of mind, and, after four days of considering the evidence, the district court determined that the defendants had not acted in "conscious disregard of the plaintiff's rights." Because we are constrained by the district court's factual findings as well as by the absence of a transcript upon which we could review these findings for clear error, we are unable to find that under these facts, plaintiff was deprived of his substantive due process rights under 42 U.S.C. Sec. 1983. Therefore, we must AFFIRM.
 
 
 
 *
 The Honorable A. Sherman Christensen, of the United States District Court for the District of Utah, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 It does not appear from our review of the briefs on appeal that plaintiff is challenging the district court's rulings as to the liability of the City of Riverton and Michael Hays under Sec. 1983. However, plaintiff listed the City of Riverton and Hays in the caption of his notice of appeal (although the body of the notice of appeal and the captions of the briefs filed on appeal suggest that the plaintiff did not intend to name Hays as an appellee). See R.Doc. 69. To the extent that plaintiff does challenge these rulings on appeal, we conclude that the rulings were correct. The City of Riverton is not liable under Sec. 1983 because nothing in the record suggests that "there is a direct causal link between a municipal policy or custom, and the alleged constitutional deprivation." City of Canton v. Harris, 109 S.Ct. 1197, 1203 (1989). For the same reason, the district court was correct in ruling against plaintiff on his Sec. 1983 claim brought against Michael Hays. Because plaintiff sued Hays only in his official capacity, the City of Riverton is the real party in interest as to that claim (and the claim was properly denied because there is no demonstrable link between a municipal policy or custom and the alleged constitutional violation). See Kentucky v. Graham, 473 U.S. 159, 166 (1985)
 
 
 [2]
 A sugartong splint is "a loop of plaster cast material that extends from each side of the leg under the foot and is wrapped in an ace bandage." Dist.Ct.Op. at 14
 
 
 [3]
 Section 324 provides:
 One who, being under no duty to do so, takes charge of another who is helpless adequately to aid or protect himself is subject to liability to the other for any bodily harm caused to him by
 (a) the failure of the actor to exercise reasonable care to secure the safety of the other while within the actor's charge, or
 (b) the actor's discontinuing his aid or protection, if by so doing he leaves the other in a worse position than when the actor took charge of him.
 
 
 [4]
 Section 323 provides:
 One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
 (a) his failure to exercise such care increases the risk of such harm, or
 (b) the harm is suffered because of the other's reliance upon the undertaking.
 
 
 [5]
 The district court found plaintiff's total damages to be $2,500, but if found plaintiff 30% at fault so it reduced the damages awarded by $750