33 F.3d 54
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Henry Lee BROWN, Guardian of Danille Anthony, Marcus
Anthony, Gregory Anthony, Alisa Anthony & DeAndre Anthony;
Mary Taylor, Administratrix of the Estate of Gloria Denise
Anthony; Mary Taylor, Guardian of Danita Anthony & LaTonya
Taylor; Plaintiffs-Appellees
Albert Hunter, Guardian of Antonio Anthony, Plaintiff-Appellee
v.
CITY OF LOUISVILLE, Defendant
Officer Charles Bryant, Defendant-Appellant
 No. 93-5086.
 United States Court of Appeals, Sixth Circuit.
 Aug. 23, 1994.
 
 Before: KENNEDY and BATCHELDER, Circuit Judges and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant appellant, Officer Charles Bryant, appeals the denial of his summary judgment motion based on qualified immunity in this civil rights action pursuant to 42 U.S.C. Sec. 1983. The order of a district court denying qualified immunity is immediately appealable. See Mitchell v. Forsyth, 472 U.S. 511 (1985); Kennedy v. City of Cleveland, 797 F.2d 297 (6th Cir.1986), cert. denied, 479 U.S. 1103 (1987). For the reasons that follow, we reverse.
 
 I.
 
 2
 On January 14, 1990, Officer Bryant was at the City of Louisville's Fourth District Police Substation when a second police officer came into the substation building and told Bryant that there was a domestic incident involving a shotgun at 106 South 35th Street. Bryant left the police station to go to the scene. Before he got into his car, Bryant was again informed of an incident at the same address. Upon arriving at the scene, a woman informed Bryant that a man had taken a shotgun into the apartment. Bryant removed his own 12-gauge shotgun from the police vehicle and chambered a round.
 
 
 3
 What occurred next is vehemently disputed by the parties. According to Bryant's version of the events, when he entered the apartment he saw Gloria Anthony and Henry Brown struggling in the kitchen doorway. Bryant told them to break it up and forced Brown to release Anthony. During this time, Bryant was carrying the shotgun in the "fore position," with both hands on the gun, barrel pointed over his shoulder toward the ceiling.
 
 
 4
 Again according to Bryant, Brown refused to move back against the wall. Bryant stepped forward in order to move Brown back. At some point, Anthony moved behind Bryant. Brown moved forward and pushed Bryant forcing Bryant backward, still holding the shotgun. At that time, Bryant's shotgun accidentally discharged into the air over his shoulder killing Anthony.
 
 
 5
 Brown's testimony provides a markedly different version of events. According to Brown, when Bryant arrived the door to the apartment was open. Bryant entered the living room carrying a shotgun and yelling obscenities. He ordered Brown to get against the wall. At that time, no one was fighting or struggling. As Brown raised his hands above his head in a "surrender fashion," Bryant struck Brown on the right shoulder with the butt of the shotgun causing the weapon to discharge over Bryant's shoulder instantly killing Anthony. Bryant then ran out of the apartment yelling obscenities. It is not alleged in either version of the incident that Bryant ever undertook any action directed at Anthony.
 
 
 6
 As a result of these events, Brown was charged with manslaughter in the second degree and three counts of wanton endangerment. After a jury trial, he was acquitted of all charges.
 
 
 7
 Three separate civil lawsuits were filed as a result of Anthony's death. The first suit was brought by Brown, as next friend of Anthony's children. The second and third suits were brought by the victim's mother. These suits were consolidated into the present suit. The plaintiffs assert, among other claims, a Fourth Amendment civil rights violation. The district court submitted to a Magistrate Judge the cross motions for summary judgment made by the parties as to, among other claims, the claims of excessive force and qualified immunity. The Magistrate Judge made a thorough analysis and submitted his Report and Recommendation to the district court. The district court adopted the Magistrate Judge's findings of fact and conclusions of law, and denied Bryant's motion for summary judgment on the excessive force claim and rejected his claim for qualified immunity.
 
 II.
 
 8
 In order to allow government officials to perform their discretionary duties without constant fear that each time they act they will be forced to defend themselves in a civil suit, the law protects government officials from suit unless their actions violate the "clearly established law" of which a reasonable officer would be aware at the time of their actions. Anderson v. Creighton, 483 U.S. 635, 639 (1987); Harlow v. Fitzgerald, 457 U.S. 800, 814 (1982); Jackson v. Hoylman, 933 F.2d 401, 402 (6th Cir.1991); Brandenburg v. Cureton, 882 F.2d 211, 215 (6th Cir.1989). To find that a clearly established right exists, the district court must find binding precedent by the Supreme Court, this court, the highest court in the state in which the action arose, or itself, so holding. Wegener v. City of Covington, 933 F.2d 390, 392 (6th Cir.1991).
 
 
 9
 Before we examine the state of the law in this case, we must determine whether this Sec. 1983 action satisfies two basic requirements of Sec. 1983 jurisprudence. First, it is a basic principle that an action under 42 U.S.C. Sec. 1983 inures only to the benefit of one whose own personal constitutional rights were violated. Archuleta v. McShan, 897 F.2d 495, 497 (10th Cir.1990) ("[A] section 1983 claim must be based upon the violation of plaintiff's personal rights, and not the rights of someone else."); Coon v. Ledbetter, 780 F.2d 1158 (5th Cir.1986) (bystander cannot recover for witnessing violation of the civil rights of another). Second, "[t]he Supreme Court has stressed that '[h]istorically, th[e] guarantee of due process has been applied to deliberate decisions of government officials to deprive a person of life, liberty, or property.' " Archuleta, 897 F.2d at 497 (quoting Daniels v. Williams, 474 U.S. 327, 331 (1986) (emphasis added)).
 
 
 10
 In Brower v. County of Inyo, 489 U.S. 593 (1989), the Supreme Court analyzed what constitutes a deliberate seizure for purposes of the Fourth Amendment. The Court held that a "[v]iolation of the Fourth Amendment requires an intentional acquisition of physical control," and,
 
 
 11
 [i]t is clear ... that a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement ... nor even whenever there is a governmentally caused and governmentally desired termination of an individual's freedom of movement ... but only when there is a governmental termination of freedom of movement through means intentionally applied.
 
 
 12
 Id. at 596 (emphasis in original). Therefore, in order to proceed with their claims, the plaintiffs must be able to show that the act which deprived Anthony of her life was achieved "by the very instrumentality set in motion or put in place in order to achieve that result." Id. at 599.
 
 
 13
 This is a very difficult case, and one in which we must struggle to separate the severity of the consequences of the careless act of a law officer and the proper standard of constitutional analysis. The undisputed facts of this case show that Officer Bryant, however careless he may have been with respect to shoving Brown, did not deliberately take any action toward Anthony. Assuming the plaintiffs' version of the facts to be correct, there is absolutely no indication that Bryant was even aware of Anthony's presence directly behind him at the moment he hit Brown with the shotgun. The Archuleta court dealt with this precise issue and concluded:
 
 
 14
 The problem with plaintiff's claim is that no state conduct was directed at him, and he cannot establish that defendants had the requisite intent to violate his rights. He was merely a bystander who was asserting indirect and unintended injury as a result of police conduct directed toward another.
 
 
 15
 We use the term bystander to mean someone who witnesses police action but who is not himself or herself an object of that action. [Footnote omitted]. As such, a bystander is unable to assert the kind of deliberate deprivation of his or her rights necessary to state a due process claim under section 1983.
 
 
 16
 Archuleta, 897 F.2d at 498. Identically, in this case, Anthony was functionally a bystander in the conflict between Bryant and Brown. The tragic and fatal wound she suffered was completely unintended and not the result of any action directed toward her.
 
 
 17
 The court in Coon v. Ledbetter, supra, arrived at a similar conclusion when it held that a wife who witnessed sheriff's deputies shooting into her mobile home and wounding her husband had no constitutional claim for emotional injuries. The court ruled that whatever her right to recover as a bystander under state law, she could not state a constitutional claim because "[t]here was no evidence that any act of the deputies was directed toward [her]." Coon, 780 F.2d at 1161.
 
 
 18
 We are sensitive to the fact that a mother has lost her child, and that children have lost their mother. One may question whether Officer Bryant should have carried a shotgun with a round in the chamber into a domestic dispute. However, the fact remains that in order to properly state a claim under Sec. 1983, the plaintiffs must show that some deliberate action was taken that violated Anthony's personal constitutional rights. Brower, 489 U.S. at 596. Here, such a showing is not possible. Therefore, we must REVERSE the district court's decision to deny Officer Bryant's motion for summary judgment based on qualified immunity with respect to the accidental death of Gloria Anthony.
 
 
 19
 CONTIE, Senior Circuit Judge, dissenting.
 
 
 20
 Though the majority believes that Officer Bryant is entitled to qualified immunity because he did not intend to violate Gloria Anthony's "personal constitutional rights," the majority's reliance on Archuleta v. McShan, 897 F.2d 495 (10th Cir.1990), is misplaced. In Archuleta, the Tenth Circuit held:
 
 
 21
 [B]ecause the evidence shows that the police officer did not direct any of his actions toward plaintiff with the requisite intent to cause him any physical or emotional damage, plaintiff has failed to show a violation of his due process rights.
 
 
 22
 Although the [Supreme Court] did not define the outer limits of the "intentional" or "deliberate indifference" standard, we assume for purposes of this analysis that reckless conduct could also form the basis for a due process violation. Our assumption is supported by the fact that recklessness "is a proxy for intent," and recklessness includes an element of deliberateness--a conscious acceptance of a known, serious risk.
 
 
 23
 Here, there has been no showing of recklessness. Notwithstanding the officer's statement that he had "no sympathy" for the child, there has been no showing that the officer acted in conscious disregard of a substantial risk to plaintiff during the time that he was arresting plaintiff's father. The officer's actions were directed solely toward plaintiff's father, not plaintiff. Further, there was no obvious and severe risk to the plaintiff during the course of the arrest. Plaintiff was approximately 20 feet removed from the accident and under the safe custody of a neighbor. The neighbor was perfectly free to remove plaintiff entirely from the vicinity. At no time was plaintiff in any physical danger from the skirmish between plaintiff's father and the officer. Under these facts, it is apparent beyond doubt that there was not the required conduct directed toward plaintiff nor the requisite intent to injure plaintiff that would give rise to a due process claim under section 1983....
 
 
 24
 Id. at 499-500 (citations and footnote omitted) (emphasis added).
 
 
 25
 Gloria Anthony and her children were in her apartment when Officer Bryant, armed with a loaded shotgun, attempted to subdue Henry Brown. Though Officer Bryant claims that his "decision to enter the premises with a loaded shotgun and his failure to immediately put that gun aside could not, as a matter of law, be characterized as unreasonable," Appellant's Brief at 10, Louisville Police Officer Shelby Lanier and Louisville Police Lieutenant James Brown testified (at Henry Brown's criminal trial) that Officer Bryant violated Louisville police procedures by carrying his loaded shotgun into a domestic dispute, and by not activating the shotgun's "safety" when he noticed small children in the apartment.
 
 
 26
 Because genuine issues of material fact exist regarding the reasonableness of Officer Bryant's conduct and the foreseeability of Gloria Anthony's death, I would affirm the denial of Officer Bryant's motion for summary judgment.