**Linda R. WEBBER and Albert R. Terhune, Plaintiffs–Appellants,**

v.

**Howard R. MEFFORD, Special Administrator to the Estate of Glen Dale Gibbs, Deceased; The City of Sapulpa, a municipal corporation; Tracy Griffin, individually and in his official capacity as a police officer for the City of Sapulpa, Oklahoma, Defendants–Appellees.**

**Nos. 94–5018, 94–5019.**

United States Court of Appeals, Tenth Circuit.

Dec. 19, 1994.

D. Gregory Bledsoe (Laura Emily Frossard with him on the brief), Tulsa, OK, for plaintiffs-appellants.

John H. Lieber (Shanann Pinkham with him on the brief), of Eller and Detrich, Tulsa, OK, for defendants-appellees.

Before BALDOCK and BRORBY, Circuit Judges, and KANE, District Judge.*

BALDOCK, Circuit Judge.

In this consolidated appeal, Plaintiffs appeal the district court's grant of summary judgment in their 42 U.S.C. § 1983 actions. We have jurisdiction under 28 U.S.C. § 1291.

On January 5, 1992 at 9:30 a.m., the Sapulpa Oklahoma Police Department received notice that Glen Gibbs, a black male, had escaped from a correctional institution, and was suspected of raping his niece and attempting to rape his wife. The teletype notice advised caution because Gibbs was believed to possess firearms and a butcher knife, and was subject to a warrant for arrest. The Sapulpa Police Department radio broadcasted this in-

---

* The Honorable John L. Kane, Jr., Senior United States District Judge for the District of Colorado, sitting by designation.

formation and a description of the vehicle Gibbs was driving.

Defendant Officer Griffin heard the transmission, and shortly thereafter observed a parked car matching the description, with a person slumped over the steering wheel. Defendant Griffin knew and could recognize Gibbs. A radio license plate check revealed the car was registered to Gibbs' brother. Defendant Griffin approached the car with his gun drawn and discovered the doors were locked. The engine was not running but the radio was on. Inside he saw a black male asleep at the wheel, beer cans, and a butcher knife on the rear floor. Defendant Griffin tapped on the window and recognized the man as Gibbs when he awoke.

Gibbs started the car and sped off. Defendant Griffin radioed in that he was in pursuit of Gibbs and gave chase with the overhead lights and sirens activated. The chase proceeded down a rural road, then onto Highway 66, northbound towards Tulsa. After both cars traveled 2.6 miles at speeds well over the limit, Gibbs' vehicle veered to the left into oncoming traffic and collided with Plaintiffs' vehicle in the southbound lane/shoulder area. Three minutes had passed since the pursuit began. Gibbs died in the collision; Plaintiffs were severely injured.

Plaintiffs filed two 42 U.S.C. § 1983 actions against Defendants[1] on July 12, 1993, claiming civil rights violations arising from (1) Defendant Griffin's alleged reckless conduct in awakening Gibbs, and (2) Defendant City of Sapulpa's alleged deliberate indifference to bystanders by failing to train, supervise, and institute an adequate pursuit policy. Defendants asserted qualified immunity, and later moved for summary judgment on the grounds that Defendant Griffin did not violate Plaintiffs' constitutional rights. The district court granted summary judgment for Defendants on the grounds that Defendant Griffin's conduct did not amount to the reckless disregard of a known risk necessary to sustain a constitutional claim under § 1983.

Further, because Plaintiffs did not show a constitutional violation by Defendant Griffin, the district court dismissed Plaintiffs' claims against the City of Sapulpa alleging inadequate training, supervision, and pursuit policies.

After the district court entered these orders, Plaintiffs filed Motions to Reconsider, and requested that the district court reopen discovery to focus on whether Defendant Griffin's conduct amounted to deliberate or reckless indifference. The district court denied Plaintiffs' Motions to Reconsider. Additionally, the district court granted summary judgment in favor of Defendant Griffin on the basis of qualified immunity, finding that his actions did not violate Plaintiffs' clearly defined constitutional rights. This consolidated appeal followed.

On appeal, Plaintiffs assert the district court erred by: (1) granting summary judgment in favor of Defendants; (2) granting Defendant Griffin qualified immunity; and (3) refusing to allow additional discovery after summary judgment. We affirm.

I.

Plaintiffs first contend the district court erred by granting summary judgment in favor of Defendants. Specifically, Plaintiffs argue that a genuine dispute of material fact exists as to whether Defendant Griffin acted in reckless disregard of a known risk by failing to undertake precautionary measures before awakening Gibbs.

We review the district court's grant of summary judgment de novo. *Applied Genetics Int'l, Inc. v. First Affiliated Securities, Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990). Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "We apply the same legal standard used by the district court under Fed.R.Civ.P. 56(c) and examine the record to determine if

---

1. The district court dismissed Plaintiffs' § 1983 claim against Defendant Howard R. Mefford, Special Administrator of the Estate of Glen Gibbs with prejudice in its order granting Defendants' motion for summary judgment because Plaintiffs made no allegations that the decedent Gibbs was acting under color of state law at the time of his death. On appeal, Plaintiffs have abandoned their claim against Mefford. Appellants' Opening Brief at 5 n. 1.

any genuine issue of material fact was in dispute; if not, we determine if the substantive law was correctly applied." *Applied Genetics,* 912 F.2d at 1241. If a movant establishes his entitlement to judgment as a matter of law based on uncontroverted, operative facts contained in the documentary evidence, summary judgment will lie. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

■ The " 'Supreme Court has repeatedly warned that section 1983 must not be used to duplicate state tort law on the federal level.' " *Medina v. City and County of Denver,* 960 F.2d 1493, 1495 (10th Cir.1992) (quoting *Washington v. District of Columbia,* 802 F.2d 1478, 1480 (D.C.Cir.1986)). Indeed, the Fourteenth Amendment is not a "font of tort law to be superimposed upon whatever systems may already be administered by the States." *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). Simply put, negligent conduct by a government official that injures an individual's life, liberty, or property does not give rise to a Fourteenth Amendment violation actionable under § 1983. *Daniels v. Williams,* 474 U.S. 327, 333, 106 S.Ct. 662, 666, 88 L.Ed.2d 662 (1985). Rather, a government official violates an individual's Fourteenth Amendment rights by injuring his or her life, liberty, or property interest with deliberate or reckless intent. *E.g., Medina,* 960 F.2d at 1496 (citing cases).

■ Thus, injuries suffered during an automobile accident do not amount to Fourteenth Amendment violations merely because the accident occurred in the context of a high-speed automobile chase by the police. *Cf. Baker v. McCollan,* 443 U.S. 137, 146, 99 S.Ct. 2689, 2695–96, 61 L.Ed.2d 433 (1979) ("[F]alse imprisonment does not become a violation of the Fourteenth Amendment merely because the defendant is a state official."); *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Rather, a police officer in a high-speed automobile chase violates a bystander's Fourteenth Amendment substantive due process rights only when the police officer displays reckless indifference to the risk created and directs his actions toward the bystander. *Medina,* 960 F.2d at 1496.[2] "An act is reckless when it reflects a wanton or obdurate disregard or complete indifference to risk, for example 'when the actor does not care whether the other person lives or dies, despite knowing that there is a significant risk of death' or grievous bodily injury." *Id.* (quoting *Archie v. City of Racine,* 847 F.2d 1211, 1219 (7th Cir.1988) (en banc), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989)); *accord Apodaca v. Rio Arriba County Sheriff's Dep't,* 905 F.2d 1445, 1446–47 n. 3 (10th Cir.1990) (reckless conduct must involve true indifference to risks created); *Archuleta v. McShan,* 897 F.2d 495, 499 (10th Cir.1990) ("[R]ecklessness includes an element of deliberateness— a *conscious* acceptance of a known, serious risk.") (emphasis in original).[3]

We first note that despite Plaintiffs' contentions to the contrary, the material facts were uncontroverted and ripe for summary judgment. *E.g., Anderson,* 477 U.S. at 248–49, 106 S.Ct. at 2510–11. Defendant Griffin observed an automobile matching the de-

---

2. Because we determine that Defendant Griffin did not act with reckless indifference to the risk created, we need not consider whether he directed his actions toward Plaintiffs. However, we note that under our precedent reckless conduct is directed toward a plaintiff if: "(1) the plaintiff is a member of a limited and specifically definable group, (2) the defendant's conduct specifically put the members of that group at a substantial risk of serious, immediate, and proximate harm, (3) the risk was obvious or known, and (4) the defendant acted recklessly in conscious disregard of that risk." *Medina,* 960 F.2d at 1496.

3. Other circuits have adopted a different standard than reckless indifference and require police conduct in a pursuit case to "shock the conscience" to sustain a § 1983 action for substantive due process violations. *See Fagan v. City of Vineland,* 22 F.3d 1296, 1303 (3d Cir. 1994) (en banc); *Temkin v. Frederick County Comm'rs,* 945 F.2d 716, 720 (4th Cir.1991), *cert. denied,* 502 U.S. 1095, 112 S.Ct. 1172, 117 L.Ed.2d 417 (1992); *Roach v. City of Fredericktown,* 882 F.2d 294, 297 (8th Cir.1989).

scription of that driven by Gibbs, an escaped felon suspected of rape and attempted rape. Defendant Griffin radioed in his location and ran a license plate check which revealed the car was registered to Gibbs' brother. Defendant Griffin approached the vehicle with his gun drawn and tried to open the doors, both of which were locked. Inside were beer cans and a butcher knife. Because he still could not determine if it was Gibbs, Defendant Griffin tapped on the window, and recognized Gibbs when he looked up. After Gibbs sped off, Defendant Griffin activated his siren and overhead lights, and radioed in that he was in pursuit of Gibbs. Defendant Griffin undertook the three minute, high-speed chase because Gibbs was subject to an open warrant for arrest, suspected of recent violent crimes, appeared to have been drinking, and was in possession of a weapon.

■ Under these uncontroverted facts Plaintiffs do not challenge Defendant Griffin's actions during the three minute high-speed pursuit of Gibbs. Rather, Plaintiffs argue that because Defendant Griffin: (1) suspected Gibbs was in the car; (2) was advised to "use caution;" and (3) had reason to believe that Gibbs was intoxicated from the presence of the beer cans in the car, he should have foreseen that Gibbs, an escaped felon, would race off in a high-speed escape attempt. Consequently, Plaintiffs argue Defendant Griffin acted with reckless indifference to a known risk by awakening Gibbs without first undertaking precautionary measures. We disagree.

■ We conclude Defendant Griffin's conduct did not reflect a "wanton or obdurate disregard or complete indifference to risk." *Medina,* 960 F.2d at 1496. Whether it was foreseeable that Gibbs would speed off when awakened is not dispositive to the question whether Defendant Griffin displayed a reckless indifference to the risk created. Rather, foreseeability is relevant to a negligence inquiry. Assuming in this case a reasonable police officer would have foreseen that Gibbs would career away from the scene to his death in an accident that injured bystanders,

that does not violate Plaintiffs' constitutional rights in the absence of facts demonstrating that Defendant Griffin acted with reckless indifference to the risk created. *See Daniels,* 474 U.S. at 333, 106 S.Ct. at 666 (holding that merely negligent conduct is not actionable under § 1983); *cf. Apodaca,* 905 F.2d at 1447 ("[N]egligent operation of a vehicle by a police officer does not rise to the level of a constitutional violation.").

Moreover, we reject Plaintiffs' arguments regarding Defendant Griffin's failure to undertake additional precautionary measures such as requesting back-up or blocking Gibbs' car before he wakened him. Such observations are criticisms made in hindsight that are not grounded in the realities of law enforcement. As we observed in *Archuleta:* "[o]ur conclusion that the officer did not act recklessly is particularly appropriate in light of the need to make 'allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving.' " *Archuleta,* 897 F.2d at 500 (quoting *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989)).

Based on our examination of the record, we find that there were no issues of material fact in dispute and that the district court correctly concluded that Defendant Griffin's conduct in awakening Gibbs as a matter of law did not "reflect[ ] a wanton or obdurate disregard or complete indifference to risk" necessary to sustain a § 1983 claim for a constitutional violation. *Medina,* 960 F.2d at 1496. Thus, the district court did not err in granting summary judgment in favor of Defendants.[4]

■ Because Defendant Griffin did not violate Plaintiffs' constitutional rights, the district court correctly dismissed Plaintiffs' claims against the City of Sapulpa for inadequate training, supervision, and pursuit policies. A claim of inadequate training, supervision, and policies under § 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation

---

4. Because we affirm the district court's ruling that Defendant Griffin did not violate Plaintiffs' constitutional rights, we need not decide whether

the district court properly granted Defendant Griffin qualified immunity.

by the person supervised. *See Collins v. City of Harker Heights,* 503 U.S. 115, ——, 112 S.Ct. 1061, 1066, 117 L.Ed.2d 261 (1992); *City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986); *Hinton v. City of Elwood, Kansas,* 997 F.2d 774, 782 (10th Cir.1993).

## II.

Plaintiffs also maintain the district court erred in denying their Motions to Reconsider. After the district court granted summary judgment, Plaintiffs obtained new counsel and sought to reopen discovery by filing Motions to Reconsider pursuant to Fed. R.Civ.P. 59(e). Plaintiffs wanted to obtain and submit the deposition of Samuel G. Chapman, a criminal policy and procedure expert.[5] As an offer of proof, Plaintiffs submitted the expert's affidavit which concluded that Defendant Griffin's failure to take other precautionary measures before awakening Gibbs amounted to reckless disregard of a known risk. The district court denied Plaintiffs' Motions to Reconsider, and concluded that a reasonable jury could not find that Officer Griffin's actions, in awakening Gibbs, involved the reckless intent necessary to sustain a claim for a constitutional violation under § 1983. On appeal, Plaintiffs argue that the district court abused its discretion in refusing to reopen discovery to consider the affidavit of their expert.

 A postjudgment motion to reconsider summary judgment based on subsequently produced evidence is treated as a motion to alter or amend the judgment under Fed. R.Civ.P. 59(e). *Committee for the First Amendment v. Campbell,* 962 F.2d 1517, 1523 (10th Cir.1992). "[W]e evaluate the district court's ruling on the Rule 59(e) motion for an abuse of discretion." *Id.* "The purpose for such a motion 'is to correct manifest errors of law or to present newly discovered evidence.'" *Id.* (quoting *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985), *cert. denied,* 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986)). In order to supplement a Rule 59(e) motion with additional evidence such as an affidavit by an expert, the movant must show either (1) that the evidence is newly discovered, or (2) if the evidence was available at the time summary judgment was granted, that counsel made a diligent yet unsuccessful attempt to discover the evidence. *Id.* (citing *Chery v. Bowman,* 901 F.2d 1053, 1057–58 n. 6 (11th Cir.1990)).

Here, Plaintiffs satisfy neither requirement. Instead, Plaintiffs maintain that they did not know the importance of expert evidence until they retained new counsel, after the district court had already granted summary judgment against them. This justification does not support Plaintiffs' Motions to Reconsider. Consequently, the district court did not abuse its discretion in denying Plaintiffs' Motions to Reconsider and in refusing to allow further discovery.

AFFIRMED.

---

5. Plaintiffs originally wanted to depose and submit the deposition of Defendant Griffin as well. However, on appeal Plaintiffs have abandoned their request to depose Defendant Griffin.