984 F.2d 358
 63 Fair Empl.Prac.Cas. (BNA) 1567,
60 Empl. Prac. Dec. P 42,003
Patricia GALLEGOS, Plaintiff-Appellee,
v.
CITY AND COUNTY OF DENVER; Federico Pena; William Roberts;
David Miller; Kathy Archuleta; Allegra Haynes; Kevin
Marchman; Larry Fullerton; John Mrozek; Ruth Rodriguez;
Michael Musgrave; Randy Alexander; Ron Younger; George
Doughty, Defendants-Appellants,
King Harris, Defendant.
 No. 91-1169.
 United States Court of Appeals,
Tenth Circuit.
 Jan. 20, 1993.
 
 Paul A. Baca, Denver, CO, for plaintiff-appellee.
 Patricia L. Wells, City Atty., and Darlene M. Ebert, Asst. City Atty., Denver, CO, for defendants-appellants.
 Before MOORE and TACHA, Circuit Judges, and SAFFELS,* Senior District Judge.
 TACHA, Circuit Judge.
 
 
 1
 Plaintiff-appellee Patricia A. Gallegos was appointed by Denver Mayor Federico Pena as Director of Affirmative Action on January 5, 1987. She was a nontenured political appointee serving at the pleasure of the mayor. She held this position until January 1, 1988, at which time she was removed as Director of Affirmative Action and placed in the position of Deputy Manager of Public Works for Finance Administration, another nontenured appointment. Plaintiff held this position for three months until her termination by the mayor on April 11, 1988.
 
 
 2
 Following her termination, plaintiff brought this action[1] against defendants-appellants City and County of Denver, Mayor Federico Pena, various city officials, and King Harris, a Denver businessman, claiming civil rights violations under 42 U.S.C. §§ 1981, 1983, 1985(3), and 2000d, as well as several state tort claims. In her first amended complaint, plaintiff claims that her termination was the result of discriminatory animus based on her sex and national origin; that at the time she was removed as Director of Affirmative Action, the mayor promised her that her new position would be made a Career Services Authority position with all the attendant benefits, including the job security not afforded by her appointed position; and that Mayor Pena, William Roberts, and King Harris entered into a conspiracy to terminate her and deny her the career services position.
 
 
 3
 In response, defendants claim that immediately following plaintiff's appointment, the mayor's office began to receive complaints regarding her inability to work with the minority community, her staff, and the minority contractors. Defendants contend, and plaintiff does not refute, that it was explained to her when she was appointed that a major requirement of the position was an ability to engage in good public relations with the community. In September 1987, the mayor confronted plaintiff regarding these complaints, and she was asked to respond to the complaints and to improve her relationship with the community within ninety days.
 
 
 4
 The complaints apparently continued and the problems escalated until December 1987, when the mayor removed plaintiff from the affirmative action position and transferred her to the public works position, allegedly promising to take the necessary steps to elevate the new position to Career Services Authority status. Defendants claim that in April 1988, plaintiff's sister, a Denver attorney, telephoned the mayor's office and threatened to "go to the press" if the alleged promise to create a career services position for plaintiff was not kept. It was at this point that the mayor terminated plaintiff.
 
 
 5
 Plaintiff claims that she heard from various people in the mayor's office that there was a "deal" among those close to the mayor, the mayor, and Mr. Harris to fire her in exchange for political support for the mayor's second-term candidacy. Mayor Pena, in his affidavit in support of defendants' motion for summary judgment, acknowledged that Roberts and Harris, as well as numerous other people, had complained to him about plaintiff's job performance and requested her removal, but denied any agreement or conspiracy to fire plaintiff or prevent her from obtaining a position secured by career services.
 
 
 6
 Plaintiff brought her §§ 1981 and 1983 claims against all of the named defendants. Plaintiff's § 1985(3) conspiracy claim was directed at defendants Pena, Roberts, and Harris. Defendants Alexander, Doughty, Fullerton, Haynes, Marchman, and Younger were in positions either subordinate to plaintiff or otherwise had no authority to make employment decisions regarding plaintiff. Plaintiff's contention that certain of the defendants enjoyed the mayor's confidence does not translate into employment decision authority. On appeal, plaintiff does not discuss, with any specificity, a majority of the individual defendants or their perceived culpability in her alleged wrongful termination.
 
 
 7
 The defendants filed a motion to dismiss plaintiff's complaint as failing to state a claim for relief under Fed.R.Civ.P. 12(b)(6), and claimed qualified immunity for the individual city officials. The district court denied defendants' motion to dismiss plaintiff's §§ 1983, 1985(3), and Title VI claims, but limited plaintiff on the § 1981 claim to presenting evidence as to whether she was prevented from obtaining a new position under the Career Services Authority. The court dismissed plaintiff's pendent state claims, except for her sixth claim insofar as it represented a restatement of plaintiff's § 1981 claim. The district court did not address the individual defendants' claims of qualified immunity, reasoning:
 
 
 8
 The Municipal Defendants have also raised additional issues such as employment-at-will and qualified immunity as grounds for their Motion to Dismiss. These defenses are necessarily related to facts not yet established at the pleading stage and cannot properly be decided on a motion to dismiss.
 
 Appellants' App. at 27.[2]
 
 9
 Defendants subsequently filed a motion for summary judgment, again claiming that the individual defendants were entitled to qualified immunity on the remaining claims.[3] Following a hearing, the district court dismissed all claims as to the City and County of Denver, and dismissed plaintiff's Title VI claim.[4] The district court denied summary judgment on plaintiff's §§ 1981, 1983, and 1985(3) claims. Again, the district court failed to address defendants' claim of qualified immunity, stating:
 
 
 10
 As far--well, and perhaps I should say for purposes of this order, I did not address the issue of qualified immunity, because I think there are factual issues remaining there, so as to the qualified immunity issue, I know you addressed that in your motion. I'm denying the motion with respect to the qualified immunity. Obviously, that goes only to the individual defendants. The city wouldn't have qualified immunity anyway.
 
 
 11
 Okay. So I'm not going to do anything with those individual defendants. I guess we sort them out at the conclusion of the plaintiff's case, but all I can say to the plaintiff is, she had better have some evidence at the time of trial as to these individual defendants, or she better drop them between now and trial if she can't produce any evidence. And Mr. Baca's a good lawyer and he knows what evidence it's going to take with respect to these individual defendants to overcome the qualified immunity doctrine, and we're all well familiar with the mandates of the cases on qualified immunity with respect to the fact that they must show--and I recognize the Court should look at that on summary judgment, but as far as the individual defendants, I'm just not inclined to sort out as to each individual defendant.
 
 
 12
 Appellants' App. at 358-59.
 
 
 13
 To withstand the defense of qualified immunity in a summary judgment motion, "plaintiff must produce facts 'sufficient to show both that the defendant's alleged conduct violated the law and that the law was clearly established when the alleged violation occurred.' " Bruning v. Pixler, 949 F.2d 352, 356 (10th Cir.1991) (quoting Pueblo Neighborhood Health Ctrs., Inc. v. Losavio, 847 F.2d 642, 646 (10th Cir.1988)), cert. denied, --- U.S. ----, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). Only after plaintiff has met this initial burden does the burden shift to defendants to prove that no genuine issue of material fact exists. Losavio, 847 F.2d at 646.
 
 
 14
 This court has held that the question of whether the law was clearly established at the time of the alleged violation is a purely legal question, and cannot be avoided by "framing it as factual." Workman v. Jordan, 958 F.2d 332, 336 (10th Cir.1992); see also Siegert v. Gilley, --- U.S. ----, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991) (a decision on the "purely legal question" of qualified immunity permits a defendant to avoid the expense and inconvenience of a trial on the merits). A successful claim of qualified immunity allows a public official to avoid the burdens of discovery and litigation, as well as liability. Harlow v. Fitzgerald, 457 U.S. 800, 817-18, 102 S.Ct. 2727, 2737-38, 73 L.Ed.2d 396 (1982). "The entitlement [to qualified immunity] is an immunity from suit rather than a mere defense to liability; ... it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). Consequently, when the qualified immunity defense is raised in a summary judgment motion, the defendant should be spared the burden of going forward, unless and until the plaintiff is able to meet the burden of establishing that the defendant's alleged actions violated clearly established law. Powell v. Mikulecky, 891 F.2d 1454, 1457 (10th Cir.1989).
 
 
 15
 Defendants' appeal in this case is not from an order of the district court denying summary judgment based on qualified immunity, but rather from an order denying summary judgment and postponing a decision on the qualified immunity question until trial. See Workman, 958 F.2d at 335. In essence, the district court in this case is requiring the defendants to go to trial before determining whether or not they are entitled to qualified immunity. This illustrates the kind of undermining of the purpose of qualified immunity which the Supreme Court seeks to avoid in Harlow and Mitchell. Because there is adequate basis in the record to determine that plaintiff, having a full and fair opportunity to do so, failed to meet her burden of showing that the actions of the defendants were in violation of clearly established law of which a reasonable person would have been aware, we determine that the defendants are entitled to judgment as a matter of law based on qualified immunity.
 
 DISCUSSION:
 
 16
 In her complaint, plaintiff contends that the defendants discriminated against her "because of her national origin and/or in retaliation for her attempts to follow federal anti-discrimination laws and denied her rights to equal employment opportunity." Appellants' App. at 12. Plaintiff argues that her right to equal employment opportunity was violated by a discriminatorily motivated conspiracy to prevent her from obtaining a Career Services Authority position with the City and County of Denver.[5]
 
 
 17
 Sections 1983 and 1985(3) of the Civil Rights Acts do not create substantive rights. See Trujillo v. Grand Junction Regional Ctr., 928 F.2d 973, 977 (10th Cir.1991) (quoting Tafoya v. Adams, 816 F.2d 555, 558 n. 5 (10th Cir.), cert. denied, 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 108 (1987)) (§ 1983 " 'creates only a remedy for violations of rights secured by federal statutory and constitutional law' "); Dixon v. City of Lawton, 898 F.2d 1443, 1448 (10th Cir.1990) (§ 1985(3) does not provide a substantive right, but is a procedural statute which provides a remedy for a deprivation of an existing right). Although difficult to discern with any certainty, it appears that plaintiff is asserting that a violation of her rights under § 1981 underlies her §§ 1983 and 1985(3) claims. However, a claim for discriminatory discharge cannot be brought under § 1981. See Patterson v. McLean Credit Union, 491 U.S. 164, 176-78, 109 S.Ct. 2363, 2372-73, 105 L.Ed.2d 132 (1989); see also Trujillo, 928 F.2d at 975 (§ 1981 does not provide a remedy for racial discrimination in employment conditions, only in the making and enforcing of contracts). None of the incidents related by plaintiff in support of her contention that she was a victim of discriminatory actions during her tenure as Director of Affirmative Action involves her right to make or enforce a contract. See Patterson, 491 U.S. at 179-80, 109 S.Ct. at 2374-75.[6] Therefore, neither plaintiff's removal from the affirmative action position nor her April 1988, termination by the mayor is actionable under § 1981. Consequently, the only issue thus remaining is whether the mayor's failure to take the steps necessary to have plaintiff's Public Works position brought under the Career Services Authority was motivated by discriminatory animus in violation of plaintiff's § 1981 rights.
 
 
 18
 When the mayor relieved plaintiff of her duties as Director of Affirmative Action, an appointed position, and placed her as a deputy director in Public Works, another appointed position, he allegedly promised her a vacation, a salary increase, and that he would initiate the process necessary to make the Public Works position a Career Services Authority position. He allegedly assured her that, because she was already performing the duties and responsibilities of the position, she would have an "inside track" in competing for the position once it received career services status. See Appellee's Ans.Br. at 8. Plaintiff received the vacation time and the salary increase, but claims that, at the time of her termination three months later, no action had been taken by the mayor, or anyone on his staff, to implement the procedures necessary to create a career services position.
 
 
 19
 Plaintiff does not refute the existence of very definite guidelines for the creation of, and application and qualification for, Career Services Authority positions with the City and County of Denver. Plaintiff also presents no evidence to indicate that the mayor, or any other defendant, had the authority or ability to circumvent these procedures.
 
 
 20
 Plaintiff further concedes that, pursuant to the charter of the City and County of Denver, as an appointee of the mayor, she served at will and could be terminated by the mayor without cause. However, she continues to assert that the mayor's alleged "promise" to put the mechanism in motion to create a career services position, for which she may be qualified, created a constitutionally protected property interest. We do not agree. See, e.g., Driggins v. City of Oklahoma City, 954 F.2d 1511, 1515 (10th Cir.) (persons lacking authority to deviate from city charter provisions cannot create protected property interests by "mutually explicit understandings"), cert. denied, --- U.S. ----, 113 S.Ct. 129, 121 L.Ed.2d 84 (1992).
 
 
 21
 "A property interest protected by the due process clause results from a legitimate claim of entitlement created and defined 'by existing rules or understandings that stem from an independent source such as state law.' " Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, 927 F.2d 1111, 1116 (10th Cir.1991) (quoting Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). Accordingly, under Colorado law, in order for a person to have a property interest in a benefit such as employment, the person "must have more than an abstract need or desire for it and must have more than a unilateral expectation of it. Instead, he must have a legitimate claim of entitlement to it." Wilkerson v. State, 830 P.2d 1121, 1124 (Colo.Ct.App.1992). There is nothing to indicate that plaintiff had a legitimate claim of entitlement to a not yet existing career services position or that the mayor's promise regarding the steps he would take to create the position produced anything more than a future expectation.
 
 
 22
 Plaintiff asks this court to "apply a common sense approach" to a determination of whether she has established a prima facie case of discrimination. See Appellee's Ans.Br. at 18-19. However, plaintiff's allegations that the delay in creating a career services position for her was in retaliation for her refusal to favor black contractors while in the affirmative action office and because of her Hispanic origin are vague, conclusory, and fail to satisfy plaintiff's burden of persuasion. See Patterson, 491 U.S. at 186-87, 109 S.Ct. at 2377-78 (plaintiff must prove she applied for and was qualified for a position which was subsequently filled by a white person). Consequently, even if we could recognize a protected property interest in the mayor's future "promises," plaintiff's arguments would fail.
 
 
 23
 As stated above, government officials are entitled to a grant of qualified immunity unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. at 818, 102 S.Ct. at 2738. The "objective reasonableness" standard set forth in Harlow often rests on a determination of whether the defendant's conduct can be traced to the subjective element of impermissible motive or intent. Lewis v. City of Fort Collins, 903 F.2d 752, 755 (10th Cir.1990). Even if we accept all of plaintiff's facts as true, we can discern no evidence of discriminatory animus in the actions of any of the defendants which can be tied to plaintiff's failure to obtain a career services position.
 
 
 24
 In addition, plaintiff has not established, by either direct or circumstantial evidence, that there was a meeting of minds or agreement among certain of the defendants, discriminatorily motivated, to deprive her of equal protection. See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1230 (10th Cir.1990) ("A civil conspiracy requires the combination of two or more persons acting in concert"); Dixon, 898 F.2d at 1447 (" § 1985(3) requires proof that a conspirator's action was motivated by a class-based, invidiously discriminatory animus"). Without such evidence, even a "common sense approach" would not give rise to the inference that a discriminatorily motivated conspiracy existed which acted to deprive plaintiff of equal protection. See General Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 391, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835 (1982) (§ 1981 claim requires a showing of purposeful discrimination); Batson v. Kentucky, 476 U.S. 79, 93, 106 S.Ct. 1712, 1721, 90 L.Ed.2d 69 (1986) (in order to establish an equal protection violation, plaintiff must demonstrate purposeful discrimination).
 
 
 25
 In sum, plaintiff has failed to meet her burden of establishing any violation of clearly established law in the mayor's failure to fulfill the "promise" to create a position for her, or for that matter, in the circumstances leading up to and surrounding her termination. Therefore, defendants should have been granted qualified immunity on plaintiff's §§ 1981, 1983, and 1985(3) claims.
 
 
 26
 Accordingly, we REVERSE the district court's denial of defendant-appellants' motion for summary judgment on qualified immunity grounds, and REMAND this case with directions that the district court enter summary judgment for the defendant-appellants as outlined above.
 
 
 
 *
 HONORABLE DALE E. SAFFELS, Senior District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 [1]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument
 
 
 [2]
 We note that this reasoning is incorrect. A defendant can raise the qualified immunity defense under Fed.R.Civ.P. 12(b)(6) or in a motion for summary judgment. Workman v. Jordan, 958 F.2d 332, 334 n. 2 (10th Cir.1992). A court cannot avoid reaching the legal issue of qualified immunity by framing the question as factual. Pueblo Neighborhood Health Ctrs., Inc. v. Losavio, 847 F.2d 642, 646 (10th Cir.1988)
 
 
 [3]
 King Harris filed a separate motion for summary judgment which also was denied by the district court. Defendant Harris does not appeal this decision
 
 
 [4]
 The transcript of the summary judgment hearing indicates that plaintiff, at that time, withdrew her sex discrimination claim. See Appellants' App. at 311, 317
 
 
 [5]
 Although plaintiff argued in the district court that she was the victim of discriminatory discharge in her removal from her position as Director of Affirmative Action, she appears to abandon this argument on appeal, and contends only that she was discriminated against as to the career services position which was allegedly promised to her
 
 
 [6]
 Insofar as plaintiff may have any actionable claim, we agree with defendants that her claims would be more appropriately brought and decided under Title VII of the Civil Rights Act. See Patterson, 491 U.S. at 180-81, 109 S.Ct. at 2374-75