Bernard STEWART, Plaintiff,

v.

BOARD OF COMMISSIONERS FOR SHAWNEE COUNTY, Kansas, Defendant.

No. 00–4163–JAR.

United States District Court, D. Kansas.

June 4, 2004.

Deborah J. Blakely, Gene P. Graham, Jr., White, Allinder, Graham & Buckley LLC, Independence, MO, for Plaintiff.

Ron D. Martinek, Parker & Hay, LLP, Topeka, KS, for Defendant.

### *MEMORANDUM ORDER AND OPINION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

ROBINSON, District Judge.

Plaintiff Bernard Stewart brings this action under 42 U.S.C. § 1983 against his employer, Board of Commissioners for Shawnee County, Kansas ("the County"), claiming that the County violated his constitutional rights when it failed to promote him on two separate occasions. This matter comes before the Court on the County's Motion for Summary Judgment (Doc. 183) and plaintiff's Motion to Strike Portions of Defendant's Motion for Summary Judgment (Doc. 189). For reasons stated below, the Court grants defendant's motion for summary judgment, and denies plaintiff's motion to strike as moot.

#### *Background*

This case has a protracted litigation history. When plaintiff initially filed suit, he raised numerous claims of race discrimination against the County based on disparate pay, hostile work environment, and failure to promote to three separate positions. On September 5, 2002, this Court granted the County summary judgment on plaintiff's claims of disparate pay, hostile environment and failure to promote to a position in recyclable materials (Doc. 130). The Court determined that questions of fact remained as to plaintiff's failure to promote claims regarding the Golf Course Maintenance II and Park Maintenance II positions. At that time, plaintiff was pursuing his remaining two claims under 42 U.S.C. § 1981. Trial was set to begin on May 5, 2003.

On April 21, 2003, the County filed a Motion for Determination of Issue of Law (Doc. 148) followed by a Fed.R.Civ.P. 12(h) Motion to Dismiss for Failure to State a Claim, raising for the first time the issue of whether 42 U.S.C. § 1983 provides the exclusive remedy for pursuing damages against a state actor for claims arising under § 1981. As a result of these motions, the trial date was postponed to a date uncertain and plaintiff was ordered to respond to the County's motion to dismiss within 30 days.

On July 14, 2003, the Court entered an Order (Doc. 164) determining that plaintiff's exclusive remedy for pursuing his claims against the County was under § 1983 and granting plaintiff leave to file a Third Amended Complaint.. Plaintiff complied with the Court's order (Doc. 166), and an Amended Pretrial Order was entered December 22, 2003 (Doc. 182), asserting that the actions of the County's employees were under the color of state law, the County was the moving force behind the discrimination of plaintiff and the County's customs and practices were so pervasive as to constitute discriminatory policy of defendant.

### Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[1] A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."[2] An issue of fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.[3] The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact.[4] Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof."[5] The nonmoving party may not rest on its pleadings but must set forth specific facts.[6] The court must consider the record in the light most favorable to the party opposing the motion.[7] The court determines "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law."[8] In making such a determination, the court should not weigh the evidence or credibility of witnesses. In determining whether any genuine issues of material fact exist, the court must construe the record liberally in favor of the party opposing summary judgment.[9] If an inference can be deduced from the facts

---

1. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1538–39 (10th Cir.1993).

2. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

3. *Id.* at 248, 106 S.Ct. 2505.

4. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga, Okl.*, 942 F.2d 737, 743 (10th Cir.1991).

5. *Applied Genetics Intern., Inc. v. First Affiliated Securities, Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990) (citing *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548).

6. *Id.*

7. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985).

8. *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505.

9. *McKibben v. Chubb*, 840 F.2d 1525, 1528 (10th Cir.1988) (citation omitted).

that would allow the nonmovant to prevail, summary judgment is inappropriate.[10]

### Facts

As a threshold matter, the Court will address plaintiff's motion to strike portions of defendant's motion for summary judgment. Plaintiff moves to strike facts previously asserted in defendant's first motion for summary judgment, as well as the supplemental affidavit of Archie Larkin. Plaintiff also asks the Court to strike portions of defendant's memorandum requesting the Court to, in effect, reconsider its ruling denying summary judgment on the two failure to promote claims.

The complete factual background of this case is set forth in the Memorandum and Order (Doc. 130) filed September 5, 2002. The Court incorporates those facts, and sets forth only those additional factual findings required to determine the legal issues related to plaintiff's § 1983 claim that are before it. Although plaintiff's arguments with respect to defendant's attempt to reargue the issues previously decided by the Court are well taken, the Court does not reach this issue as it finds for defendant on plaintiff's § 1983 claim.

The following facts are either uncontroverted or construed in a light most favorable to plaintiff.

In February 1996, the County adopted Resolution No. 96–36, which provides under "Hiring" the following:

(1) The County will hire employees solely on the basis of each applicant's qualifications, abilities and potential.

(2) The EEO Officer will review the policy of nondiscriminatory hiring with all persons responsible for hiring.

(3) All persons responsible for making recommendations for hiring and persons responsible for hiring shall insure that qualified minorities and women have the opportunity to be employed at all levels within the County.

The Board of County Commissioners has overall responsibility for the EEO/Affirmative Action Plan and all elected officials, administrative personnel and department heads are responsible for carrying out all aspects of the Plan within their division or department.

In October 1996, the County adopted Resolution No. 96–176, regarding the Personnel Rules and Regulations Manual for County employees. Article 1.3 of the Manual, captioned "ADMINISTRATION," states:

The personnel program consists of all policies and procedures related to personnel administration in the service of the County and shall be administered by the Director of Human Resources under the direction of the Board of County Commissioners.

The director of any department may formulate in writing reasonable administrative regulations for the conduct of the department. Such written regulations shall be available to all department employees. Nothing in this paragraph shall be construed as granting any department authority to adopt regulations in violation of, or in conflict with, personnel regulations approved and adopted by the Board of County Commissioners.

Article 5 of the Personnel Manual is captioned, "RECRUITMENT, SELECTION AND PLACEMENT," and provides in relevant part:

5.6 *PROMOTION.*

It is the policy of the County to fill all vacancies from the ranks of present employees whenever possible. All employees seeking promotion are required to meet the minimum qualifications for the

---

**10.** *United States v. O'Block,* 788 F.2d 1433, 1435 (10th Cir.1986) (citation omitted).

classifications to which they seek promotion as provided in Section 5–4. The following language only pertains to promotions within the same department: If, at any time before the promotion becomes permanent, the employee's supervisor determines that the employee cannot satisfactorily perform the job, the supervisor shall have the right to return the employee to the job from which he/she was promoted or to a job of substantially equal duties and responsibilities without the loss of seniority in such job. The employee may disqualify himself/herself and return to the employee's old job with all corresponding rights.

Article 11 of the Manual, captioned "GRIEVANCE PROCEDURE," provides for a three-step grievance process for complaints involving interpretation or application of a practice or policy under the personnel rules and regulations and/or departmental regulations. Under the first step, the employee discusses the grievance with his supervisor. If not resolved, under the second step the employee states the grievance in writing to his appointing authority, who shall investigate and respond to the employee in writing. Finally, under step three, the employee may appeal the grievance with the Director of Human Resources who shall cause a grievance committee to be appointed by the Board of County Commissioners.

The employment relationship between plaintiff and the County is also governed by a Collective Bargaining Agreement ("CBA") between the County and the Teamsters. Section 9.1 of the CBA concerns promotions and demotions, and provides in relevant part:

Promotions shall be made only to new positions as authorized by the Board of County Commissioners or when an authorized position becomes vacant. Promotional opportunities shall be posted a minimum of seven (7) calendar days.

The employee with the most departmental seniority and meeting the minimum qualifications shall be promoted.

Section 21.0 of the CBA, entitled "GRIEVANCE AND ARBITRATION PROCEDURE," also provides for a three-step grievance procedure for union employees of the County. Step 1 directs the employee, with or without his union steward, to orally explain his grievance to his supervisor. If the grievance is not settled, Step 2 directs the employee, through his steward, to prepare a written grievance to present to the Department Head, who will investigate the grievance and submit a decision to the employee. Step 3 directs the employee to submit, through his steward or Business Representative, the written grievance to the Director of Human Resources, who will investigate. If a satisfactory settlement is not reached in Step 3, the union must notify the County Commission that they intend to process the grievance to arbitration.

On July 17, 1998, plaintiff was hired by the County Parks and Recreation Department for the position of Park Maintenance I ("PMI"). On April 13, 1999, plaintiff applied for the position of Golf Course Maintenance II with the County Parks and Recreation Department. Golf Course Superintendent Tom Opat conducted the interview process and made the decision whom to hire for the Golf Course Maintenance II position. Opat has been the Golf Course Superintendent with the County for over twenty years and oversees operation of the two County golf courses. Opat reports directly to John Knight, Director of Parks and Recreation. As a Division Head, it was Opat's responsibility to be knowledgeable of the contents of the County's Equal Employment Opportunity and Affirmative Action Plan, and he would review the EEO policy prior to interviewing applicants. Robert Sleep, who had several days less seniority than plaintiff,

was hired for the position. Plaintiff filed a grievance with Local Union No. 696 grieving the fact that Mr. Sleep had less seniority than plaintiff. Opat responded to the grievance, that he hired Mr. Sleep because he was more qualified for the position than plaintiff, specifically in his welding, concrete and carpentry skills. The record does not indicate whether plaintiff appealed his grievance to Human Resources under Step 3 of the process.

On June 28, 2000, plaintiff applied for the position of Park Maintenance II ("PMII"), also with the County Parks and Recreation Department. Plaintiff was interviewed for the position by Dave Bartels, Lyle Bausch and Julie Towbridge. Bartels is Superintendent of the County Parks and Recreation Department, and also reports directly to John Knight. Peter Espinoza, who is Hispanic, was hired for the position. Bartels and Towbridge met with plaintiff to explain the reasons for the decision to not hire him for the PMII position. Another meeting was subsequently held with Bartels, the Union Representative Doug Stuewe, John Knight and plaintiff to discuss the decision not to promote plaintiff.

On August 2, 2000, plaintiff filed a grievance with the Union, asking to grieve not being offered the PMII position. Upon receipt of the grievance, John Knight instructed Bartels to investigate the matter. Bartels prepared a Memorandum to Knight and plaintiff, setting forth the reasons why he did not hire plaintiff for the PMII position. Doug Stuewe was a business agent for the Teamsters Union, and handled plaintiff's grievance in regards to the PMII position. On September 12, 2000, Stuewe wrote to John Knight addressing a solution to plaintiff's grievance, suggesting that PMI's be trained in the skilled crafts necessary for the PMII position, with PMI's being automatically promoted to PMII's over outside applicants. Stuewe stated that the union and plaintiff would "consider the grievance settled if we could agree to the training, and the promotion of PMI's to PMII's from within by seniority." Knight responded that, while promoting from within is important, such training should not be limited to PMI's. Knight issued a memo to Paul Wilson, the County's Human Resources Director, seeking approval of a proposed training program, and in January, 2001, the County Parks and Recreation Department implemented a Park Maintenance Trainee Program. Under the new program, designations of PMI and PMII were removed and the positions of Park Maintenance Trainee and Park Maintenance were created. Plaintiff completed the program and was promoted to a Park Maintenance position effective March 2001.

*Analysis*

Plaintiff brings his § 1983 claim directly against the Board of County Commissioners; he does not sue any individual defendants in their official or individual capacities. Section 1983 does not itself create any substantive rights.[11] It merely grants an avenue of relief to a plaintiff who has been deprived of an existing constitutional or federal statutory right by a person acting under color of state law.[12] Section 1983 reaches only deliberate deprivations of federally protected rights, and does not impose liability for mere negligence.[13] Therefore, unlike an action

11. *Gallegos v. City and County of Denver,* 984 F.2d 358, 362 (10th Cir.1993).

12. *Id.*

13. *See Woodward v. City of Worland,* 977 F.2d 1392, 1399 (10th Cir.1992) (supervisors not liable if the merely "should have known" of sexual harassment but failed to stop it), *cert. denied,* 509 U.S. 923, 113 S.Ct. 3038, 125 L.Ed.2d 724 (1993).

brought pursuant to § 1981, the County cannot be held liable for a § 1983 claim under a theory of *respondeat superior.*[14]

■ Plaintiff asserts that the County violated his constitutional rights by subjecting him to discriminatory terms and conditions of employment based on his race in failing to promote him on two separate occasions. As to plaintiff's claims, the County can be liable under § 1983 if an official custom or policy caused a violation of plaintiff's constitutional rights[15] or an individual with final policymaking authority violated plaintiff's constitutional rights.[16]

### 1. Official Custom or Policy

The County moves for summary judgment on the issue of its liability under § 1983 for the County's alleged acts of discrimination in failing to promote plaintiff. According to the County, there is simply no evidence in the record from which a reasonable jury could conclude that a policy or custom of the County caused plaintiff's injuries.

■ The parties recognize that the County may be held liable for violations of civil rights under § 1983 only if such violations result from the "execution of a government's policy or custom."[17] Thus, where there is no evidence that an employee's actions are consistent with an official policy or custom of the municipal employer, summary judgment is warranted.[18] To prevail on his claim of municipal liability under § 1983, plaintiff must establish both that a municipal custom or policy existed and that this custom or policy was the cause of, and moving force behind, the particular constitutional deprivation of which he complains.[19]

Plaintiff here does not allege the existence of any such policies. There is certainly no evidence in the record, nor does plaintiff allege, that the County has an official policy sanctioning racial discrimination in the hiring and promotion of employees; rather, the County has an official policy against discrimination and promoting equal opportunity employment and affirmative action.[20]

■ However, even if Opat and Bartels' alleged acts of discrimination do not rise to the level of official policy, the County can still be held liable if the practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law."[21] In order to establish a custom, the plaintiff must prove: 1) the existence of a continuing, persistent and widespread practice of unconstitutional misconduct by

---

14. *Id.*

15. *See Monell v. Department of Social Services,* 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114(1985).

16. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 481–84, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (holding that single decision by official responsible for establishing final policy may give rise to municipal liability); *Ledbetter v. City of Topeka, Kan.,* 318 F.3d 1183, 1189 (10th Cir.2003); *Jantz v. Muci,* 976 F.2d 623, 630 (10th Cir.1992) (same), *cert. denied,* 508 U.S. 952, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993).

17. *Faustin v. City, County of Denver, Colorado,* 268 F.3d 942, 951 (10th Cir.2001) (citing *Monell,* 436 U.S. at 694, 98 S.Ct. 2018).

18. *See Harris v. Robinson,* 273 F.3d 927, 932 (10th Cir.2001) (citing *Monell,* 436 U.S. at 690–91, 694, 98 S.Ct. 2018).

19. *Monell,* 436 U.S. at 694, 98 S.Ct. 2018; *Hollingsworth v. Hill,* 110 F.3d 733, 742 (10th Cir.1997) (requiring a direct causal link between the two).

20. *See Lankford v. City of Hobart,* 73 F.3d 283, 286 (10th Cir.1996).

21. *Id.* (citation omitted).

the County's employees; 2) deliberate indifference to or tacit approval of such misconduct of the County's policymaking officials after notice to the officials of that particular misconduct; and 3) that plaintiff was injured by virtue of the unconstitutional acts pursuant to the County's custom and that the custom was the moving force behind the unconstitutional acts.[22] Deliberate indifference is akin to recklessness-"a conscious acceptance of a known, serious risk."[23] "Recklessness is generally regarded as satisfying the scienter requirement of section 1983 because it requires proof that the defendant focused upon the risk of unconstitutional conduct and deliberately assumed or acquiesced in such risk."[24]

The County contends there is no such custom of discrimination, citing labor statistics for the year 2000, indicating that the percentage of black males in the civilian labor force was 3.3%, and that the County Parks and Recreation Department had similar statistics. Specifically, in July 2000, there were 53 individuals employed within the department and of those 53, two were African–American–plaintiff and Archie Larkin. Plaintiff counters that Bartels, Opat and Knight have made no attempt to address the EEO/Affirmative Action Plan in the Parks and Recreation Department and that none of them has ever promoted an African–American until this lawsuit was filed.

 Based on the few incidents of discrimination alleged by plaintiff, which were all directed against him, the Court finds that plaintiff has failed to establish a genuine dispute of material fact about whether the County had a custom of discriminatory employment practices. Plaintiff's failure to allege the existence of similar discrimination as to others seriously undermines his claim that the County maintained a custom of discriminatory personnel practices. Plaintiff fails to offer any evidence that other African–Americans sought a promotion and were denied. Plaintiff's claim that there are no African–Americans in County management positions misses the mark, as he did not apply for such a management position. Moreover, any claim of deliberate indifference to the alleged discriminatory conduct is seemingly belied by the County's implementation of the Parks Maintenance trainee program. Plaintiff acknowledges that as a result of this program, he obtained several months of training and was, in fact, promoted to the position he desired.

### 2. Final Policymaker

As noted above, the County can also be liable if an individual with final policymaking authority violated plaintiff's constitutional rights.[25] The County states in its memorandum in support of summary judgment, without support, that Opat and Bartels are not final policymakers for the County. Plaintiff alleges in his response that Opat and Bartels, as department heads, were responsible for implementing the County's affirmative action policy, which they ignored, and that they were in fact final policymakers. Plaintiff does not cite any authority or provide any factual support for this statement, instead declaring that because the extent of the above

22. *Gates v. Unified School Dist. No. 449 of Leavenworth County, Kan.,* 996 F.2d 1035, 1041 (10th Cir.1993); *Henderson v. Montgomery County, Kansas, Bd. of County Com'rs,* 213 F.Supp.2d 1262 1276 (D.Kan.2002).

23. *Archuleta v. McShan,* 897 F.2d 495, 499 (10th Cir.1990).

24. *Woodward,* 977 F.2d at 1399 (citing *Archuleta,* 897 F.2d at 499).

25. *Randle v. City of Aurora,* 69 F.3d 441, 448 (10th Cir.1995) (quoting *City of St. Louis v. Praprotnik,* 485 U.S. 112, 123, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)).

**1152**

individuals' final policymaking authority is disputed, summary judgment is precluded. Defendant does not address this prong of § 1983 in its reply brief. Thus, the Court is forced to undertake its own research and sift through the record in an attempt to address this issue.

"Final policymaking authority" is a legal issue for the Court to decide under state and local law.[26] The Supreme Court has highlighted two guiding inquiries in resolving this issue: "(1) whether a subordinate's discretionary decisions are constrained by general policies enacted by others; and (2) whether the subordinate's specific decisions are reviewable by others."[27]

Based on these principles, the Tenth Circuit has identified three elements that are useful in determining whether an individual is a "final policymaker": (1) whether the official is meaningfully constrained "by policies not of that official's own making;" (2) whether the official's decisions are subject to any meaningful review; and (3) whether the policy decision purportedly made by the official is within the realm of the official's grant of authority.[28]

In order to determine whether an individual holds final policymaking authority in a § 1983 case, the Court examines the legal chain of authority.[29] Except for employees of independently elected officials, Kansas law places final authority over county personnel decisions in the elected board of county commissioners.[30] There is no evidence before the Court that the County delegated their final policymaking authority to Bartel or Opat, or that their respective decisions not to promote plaintiff were not subject to meaningful review.

 An official is not a policymaker simply by virtue of possessing discretionary authority to exercise certain functions authorized by municipal policy; what is required is final authority to establish the policy itself.[31] Therefore, an official whose actions can be reviewed by other policymakers or who is constrained by policies of others does not have final policymaking authority.[32] Although the County is liable for the actions of employees who are delegated final policymaking authority, it is not liable simply because an employee or agent exercises discretionary authority granted by a particular governmental policy.[33] It is the governmental policy itself, rather than a subordinate's discretionary decisions taken pursuant to that policy, that is considered the act of the local government.[34] Thus, neither a policymaker's

**26.** *Praprotnik,* 485 U.S. at 124, 129–130, 108 S.Ct. 915 (because civil service commission possessed final authority on personnel decisions, discretionary hiring and firing decisions by subordinate employees did not constitute final policymaking by municipality).

**27.** *Id.* at 127, 108 S.Ct. 915 (plurality opinion).

**28.** *Randle,* 69 F.3d at 448 (citing *Praprotnik,* 485 U.S. at 127, 108 S.Ct. 915 and *Ware v. Unified School Dist. No. 492, Butler County, State of Kan.,* 902 F.2d 815, 818 (10th Cir. 1990) (no delegation when decision of subordinate constrained by policies not of his making or subject to review by authorized policymaker)).

**29.** *See Jantz,* 976 F.2d at 631 (school board not liable for principal's action because

school board had ultimate legal authority to review decisions involving hiring and firing); *Ware,* 902 F.2d at 819 (municipality not liable because principal who fired plaintiff was not final policymaker on personnel matters; he was vested with no such authority and his decisions were reviewed by school board).

**30.** *See* K.S.A. § 19–101(a); *Bd. of County Com'rs of County of Lincoln v. Nielander,* 275 Kan. 257, 264–67, 62 P.3d 247 (2003).

**31.** *Praprotnik,* 485 U.S. at 125–128, 108 S.Ct. 915.

**32.** *Id.*

**33.** *Id.*

**34.** *Id.*

simple acquiescence in the discretionary decisions of a subordinate nor the failure to investigate the basis for them is a delegation of policymaking authority.[35]

██ Based on the record before it, the Court concludes that plaintiff has not demonstrated a genuine dispute as to whether Opat and Bartels exercise final policymaking authority in the area of personnel matters within the meaning of § 1983. Using the general principles suggested by the Tenth Circuit, it is clear that Opat and Bartels were not final policymakers within the meaning of § 1983. Unlike those cases where the Tenth Circuit has found § 1983 liability based upon a finding that the decision was made by a final policymaker,[36] Opat's and Bartel's decisions were constrained by policies not of their making and were undoubtedly subject to review under clearly established, formal and apparently meaningful procedures. Both the County and the CBA grievance process allowed an employee to challenge hiring/promotion decisions. Plaintiff offers nothing to suggest that the review process was "illusory." On the contrary, after plaintiff was denied the PMII position, based on the recommendation of the union representative handling plaintiff's grievance, the Parks Department implemented a training program that ultimately led to plaintiff's promotion. The uncontroverted evidence demonstrates that the County retained the right to review the decisions made by department heads with regard to hiring decisions. Accordingly, Opat and Bartels decisions were clearly reviewable by others. In addition, their decisions not to promote plaintiff were constrained by general policies contained in the Personnel Manual which, as Opat and Bartels understood it, required them to hire the person most qualified for the position.

Instead, it appears to the Court that Opat and Bartels were merely implementers of a promotion process promulgated by the County. While the division heads clearly had discretion in hiring decisions taken pursuant to that policy, there is no evidence that Opat or Bartels had any final authority to establish hiring policy. Plaintiff misdirects his argument towards whether discriminatory acts occurred, which is a separate and distinct question from whether such acts were committed by Opat and Bartels as final policymakers. The law is clear that a municipal defendant cannot be found liable under § 1983 based on a *respondeat superior* theory.[37] The Court therefore finds as a matter of law that Opat and Bartels were not final policymakers. Consequently, the County is entitled to summary judgment on plaintiff's § 1983 claim.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's motion for summary judgment (Doc. 183) is GRANTED;

**IT IS FURTHER ORDERED** that plaintiff's motion to strike (Doc. 189) is DENIED as moot.

IT IS SO ORDERED.

---

35. *Id.*

36. *See, e.g., Flanagan v. Munger*, 890 F.2d 1557, 1568–69 (10th Cir.1989)(finding § 1983 liability where discipline decisions of police

chief "for all intents and purposes" were final "and any meaningful administrative review is illusory.").

37. *Monell*, 436 U.S. at 691, 98 S.Ct. 2018.