HOLMES, Circuit Judge,
Concurring.
I fully join the lead opinion in this case. However, Plaintiffs’ arguments have underscored for me the need to offer some clarifying words for litigants and district courts about the application of the summary judgment standard of review in the qualified immunity context. More specifically, Plaintiffs have argued in part that the district court erred in entering summary judgment on qualified immunity grounds because there were genuine issues of material fact that should properly be determined by a jury. See, e.g., Aplt. Opening Br. at 8 (“[Tjhere is a genuine issue of material fact as to whether the County deputies or any third party was in danger at the time Chad was fatally shot, which would render Morrical’s exercise of force through the use of a gun unconstitutional.”). For the reasons outlined below, this line of argument is fundamentally misguided and courts should be attuned to recognize its infirmities.
Application of the summary judgment standard of review in the qualified immunity context may at first glance seem straightforward. However, in practice, application of the standard frequently has proven to be challenging.[1] See United States ex rel. Burlbaw v. Orenduff, 548 F.3d 931, 940 n. 6 (10th Cir.2008) (“[W]e acknowledge our long-standing view that the task of district courts, and consequently appellate courts, is different in reviewing motions for summary judgment under traditional standards and qualified immunity principles. Indeed, courts should exercise care not to confuse the two analytic frameworks. Admittedly, at least in some instances, this apparently is easier said than done.” (citations omitted)). Courts and litigants alike often have difficulty analyzing whether summary judgment on the basis of qualified immunity is appropriate.
“Lower courts struggle with the doctrine’s application, finding that, at least in *1325 some circumstances, contested factual issues preclude summary judgment.” Alan K. Chen, The Burdens of Qualified Immunity: Summary Judgment and the Role of Facts in Constitutional Tort Law, 47 Am. U.L. Rev. 1, 4, 5 (1997) [hereinafter Chen, Burdens of Qualified Immunity ] (“While the qualified immunity defense has long been recognized, its application and administration continue to perplex courts and provoke a substantial amount of scholarly commentary.”). Appellate courts also have struggled with the application of the doctrine. Judge Charles Wilson of the Eleventh Circuit has noted that “[wjading through the doctrine of qualified immunity is one of the most morally and conceptually challenging tasks federal appellate court judges routinely face.” Charles R. Wilson, “Location, Location, Location": Recent Developments in the Qualified Immunity Defense, 57 N.Y.U. Ann. Surv. Am. L. 445, 447 (2000).
At both judicial levels, the confusion at the summary judgment stage appears to relate primarily to the decisional significance of disputed material factual issues and the related question of burden shifts between plaintiff and defendant. Cf. Chen, Burdens of Qualified Immunity, supra, at 6 (noting that “[m]any of the dilemmas experienced in the understanding and application of the qualified immunity doctrine reflect th[e] fundamental misconception about the role of facts under the doctrine and the possibility of resolution on summary judgment”). The plaintiff first must shoulder a heavy two-part burden. In determining whether a plaintiff has carried its two-part burden of proving (1) that defendant violated a constitutional right and (2) that the right was clearly established, ordinarily courts must “adopt” plaintiffs “version of the facts.” Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007); see id. at 378, 127 S.Ct. 1769 (“[C]ourts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the [summary judgment] motion. In qualified immunity cases, this usually means adopting ... the plaintiffs version of the facts.” (second alteration in original) (citations omitted) (internal quotation marks omitted)); see Riggins v. Goodman, 572 F.3d 1101, 1107 (10th Cir.2009) (noting that generally in the qualified immunity context in addressing the legal inquiry “we accept the facts as the plaintiff alleges them”); see also Whittier v. Kobayashi, 581 F.3d 1304, 1307 (11th Cir.2009) (“We resolve all issues of material fact in favor of the plaintiff, and then, under that version of the facts, determine the legal question of whether the defendant is entitled to qualified immunity.”).
However, because we are beyond the pleading phase of the litigation, plaintiffs version of the facts must find support in the record. See Scott, 550 U.S. at 380, 127 S.Ct. 1769 (“At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a ‘genuine’ dispute as to those facts.” (emphasis added)); see Estate of Larsen ex rel. Sturdivan v. Murr, 511 F.3d 1255, 1259 (10th Cir.2008); see also Weigel v. Broad, 544 F.3d 1143, 1156-57 (10th Cir.2008) (O’Brien, J., dissenting) (“The first step is to distill the record to uncontested facts and contested material facts favorable to the party claiming injury. But only genuine issues of contested material fact are entitled to favored status.” (citation omitted)), cert. denied, — U.S. —, 129 S.Ct. 2387, 173 L.Ed.2d 1295 (2009). More specifically, plaintiffs version of the facts cannot be “so utterly discredited by the record that no reasonable jury could have believed” it. Scott, 550 U.S. at 380, 127 S.Ct. 1769.
*1326 In addressing the legal issue in the qualified immunity context of a violation vel non of a clearly established constitutional right, however, the principal purpose of assessing whether plaintiffs evidence gives rise to genuine issues of material fact is different than it is in the traditional summary judgment analytic paradigm. Specifically, contrary to the latter, the objective is not to determine whether a plaintiff survives summary judgment because plaintiffs evidence raises material issues that warrant resolution by a jury. Instead, the principal purpose is to determine whether plaintiffs factual allegations are sufficiently grounded in the record such that they may permissibly comprise the universe of facts that will serve as the foundation for answering the legal question before the court. Cf. Green v. Post, 574 F.3d 1294, 1296-97 & n. 4 (10th Cir.2009) (citing Scott in the context of qualified immunity summary judgment review and declining to incorporate into the universe of relevant facts an allegation refuted by a video-tape in the record); Weigel, 544 F.3d at 1156-57 (O’Brien, J., dissenting) (noting that after the relevant universe of facts is “distilled” from the record the “next step” is determine whether those facts “demonstrate” the violation of a clearly established constitutional right). Compare Pearson v. Callahan, — U.S. —, 129 S.Ct. 808, 815-16, 172 L.Ed.2d 565 (2009) (“First, a court must decide whether the facts that a plaintiff has ... shown (see [Federal] Rules [of Civil Procedure] 50, 56) make out a violation of a constitutional right.”), with Scott, 550 U.S. at 380, 127 S.Ct. 1769 (“When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.”).
It is only after plaintiff crosses the legal hurdle comprised of his or her two-part burden of demonstrating the violation of a constitutional right that was clearly established, that courts should be concerned with the true factual landscape — as opposed to the factual landscape as plaintiff would have it. Based upon that true factual landscape, courts should determine whether defendant can carry the traditional summary judgment burden of establishing that there are no genuine issues of material fact for jury resolution and that defendant is entitled to judgment as a matter of law.[2] See Medina v. Cram, 252 *1327 F.3d 1124, 1128 (10th Cir.2001) (“If the plaintiff successfully establishes the violation of a clearly established right, the burden shifts to the defendant, who must prove that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.” (internal quotation marks omitted)); Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1186 (10th Cir.2001) (quoting Medina); see also Gallegos v. City & County of Denver, 984 F.2d 358, 361 (10th Cir.1993) (“Only after plaintiff has met this initial [two-part qualified immunity] burden does the burden shift to defendants to prove that no genuine issue of material fact exists.”); cf. Giles v. Kearney, 571 F.3d 318, 327 & n. 4 (3d Cir.2009) (recognizing (a) that it “must accept” plaintiffs version of the facts as true, (b) that “qualified immunity analysis and summary judgment legal standards for a constitutional claim are not susceptible to fusion[,] and [c] that denying summary judgment because a material issue of fact remains on an excessive force claim is improper on a qualified immunity inquiry,” but identifying disputed issues of material fact that apparently precluded summary judgment once the burden shifted to the defendants).
Plaintiffs here have fallen prey to this confusion surrounding application of the summary judgment standard of review in the qualified immunity context. Throughout their argument concerning the legal constitutional question (i.e., in the area relating to Plaintiffs’ two-part burden), Plaintiffs appear to focus on the inquiry appropriate for traditional summary judgment analysis: that is, on the inquiry into whether there are genuine issues of material fact (i.e., material factual disputes) for resolution by a jury. However, as detailed herein, because at issue is the legal qualified immunity question, that focus is misplaced. See, e.g., Goddard v. Urrea, 847 F.2d 765, 770 (11th Cir.1988) (Johnson, J., dissenting) (observing that, even if factual disputes exist, “these disputes are irrelevant to the qualified immunity analysis because that analysis assumes the validity of the plaintiffs’ facts”).
I am in full agreement with the lead opinion and, in my view, the foregoing observations are entirely consistent with it. However, I write separately in the hope of shedding some clarifying light on the process of applying the summary judgment standard of review in the qualified immunity setting.

. E.g., Flatford v. City of Monroe, 17 F.3d 162, 166 (6th Cir.1994) ("[T]he difficulty for all judges with qualified immunity has not been articulation of the rule, but rather the application of it.”); see also Alan K. Chen, The Facts About Qualified Immunity, 55 Emory L.J. 229, 230 (2006) ("The legal system continues to struggle with qualified immunity....”); Teressa E. Ravenell, Hammering in Screws: Why the Court Should Look Beyond Summary Judgment When Resolving § 1983 Qualified Immunity Disputes, 52 Vill. L. Rev. 135, 136 (2007) (noting scholars' argument that courts "have difficulty resolving qualified immunity disputes before trial because qualified immunity is an inherently fact-based inquiry”); Michael M. Rosen, A Qualified Defense: In Support of the Doctrine of Qualified Immunity in Excessive Force Cases, With Some Suggestions for Its Improvement, 35 Golden Gate U.L.Rev. 139, 173 (2005) ("[T]his seemingly simple qualified immunity standard actually contains great complexity.”).

. Certain language in Olsen v. Layton Hills Mall, 312 F.3d 1304 (10th Cir.2002), might suggest that we also have lost our way in the analytic morass of qualified immunity analysis. There, we noted that "we will not grant a defendant official qualified immunity if material facts are in dispute,” and criticized the district court for "failing] to take into account several disputed factual issues in granting summary judgment on the basis of qualified immunity” in favor of the officer defendant. 312 F.3d at 1313. However, a careful reading of Olsen belies any suggestion of confusion because we expressly operated under the correct summary judgment standard for the qualified immunity context. More specifically, we recognized that in that context, we l'eview summary judgment questions "differently from other summary judgment decisions.” Id. at 1312 (internal quotation marks omitted). And we remarked that it is only "[i]f the plaintiff indeed demonstrates that the official violated a clearly established constitutional or statutory right,” that "the burden shifts back to the defendant” to bear "the normal summary judgment burden of showing that no material facts remain in dispute that would defeat the qualified immunity defense.” Id. The referenced language from Olsen and its conclusion that summary judgment was inappropriate are best read as reflecting our antecedent determination that the defendant officer had failed to carry his burden at the third stage of demonstrating the absence of a genuine issue of material fact. See id. at 1313 (discussing defendant officer’s failure to carry his burden and noting that "the case before *1327 us is not one in which [PlaintiffjAppellant asserts that the sun rises in the west and demands a jury trial to resolve the issue”). At that stage, focusing on the true factual picture, the existence of genuine disputes of material fact would indeed be relevant. See id. at 1312-13 (discussing operative standards and noting that "[w]hen there are unresolved disputes of historical fact relevant to whether the officer had probable cause and to what information he possessed — and thus to whether he may properly claim qualified immunity, a court may not grant summary judgment based on qualified immunity because the officer would not have shown that no genuine dispute exists as to material fact ” (emphasis added)); see also id. at 1313 (noting that because of the officer’s failure to demonstrate an absence of genuine issues of material fact "we believe that a jury must resolve [the] disputed facts”).